1                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF CONNECTICUT
2
                                        )
3    UNITED STATES OF AMERICA,          )    No. 3:17-CR-00068-AWT
                                        )    141 Church Street
4                   vs.                 )    New Haven, Connecticut
                                        )
5    ERICK CRESPO-ESCALANTE.            )    April 4, 2017
     _____   )
6
              TRANSCRIPT OF MOTION HEARING, PLEA HEARING
7
              BEFORE THE HONORABLE SARAH A. L. MERRIAM
8
                   UNITED STATES MAGISTRATE JUDGE
9
     APPEARANCES:
10
     For the Plaintiff:          ROBERT M. SPECTOR, AUSA
                                 U.S. Attorney's Office - NH
11                               157 Church Street
                                 25th Floor
12                               New Haven, CT 06510

13   For the Defendant:          MICHAEL MOSCOWITZ, ESQ.
                                 Law Office of Michael Moscowitz
14                               131 Dwight Street
                                 New Haven, CT 06511
15

16

17

     ECR Operator:               FTR
18
                              Pessy Kaufman
19                               eScribers
                           7227 N. 16th Street
20                              Suite #207
                            Phoenix, AZ 85020
21                            (973) 406-2250

22

23

24

25

1                           I N D E X

2    RULINGS:                                  PAGE    LINE
     Motion to seal portion of the               7      13
3    proceedings, granted.
     Continuance of sixty days given to         43      15
4    delay sentencing.
     Guilty plea                                41

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy

1              (10:29 O'CLOCK, A.M.)

2              THE CLERK:  Oyez, oyez, oyez.  The Honorable United

3    States District Court for the District of Connecticut is now

4    open.  All persons having causes of action pending or who've

5    been bound or summoned to appear herein will take due notice

6    hereof and give attention according to law.  The Honorable

7    Sarah Merriam's presiding.

8              THE COURT:  Good morning, everybody.  Please be

9    seated.

10              MR. SPECTOR:  Good morning, Your Honor.

11              MR. MOSCOWITZ:   Good morning, Your Honor.

12              THE COURT:  This is the matter of United States v.

13    Erick Crespo-Escalante.  I gather we have an interpreter on

14    the line.

15              THE INTERPRETER:  Good morning, Your Honor.  This is

16    Laura Garcia-Hein staff interpreter for the United States

17    District Court of -- for the District of Nebraska.

18              THE COURT:  Good morning.  I will have the

19    interpreter sworn.

20                        INTERPRETER SWORN

21              THE CLERK:  Thank you.

22              THE COURT:  All right.

23              THE INTERPRETER:  Your Honor, the interpreter was

24    simply double checking that the defendant could hear the

25    interpreter.

                              Colloquy

 1              THE COURT:  Okay.  I'll take appearances of counsel,

 2    please.  Beginning with the Government.

 3              MR. SPECTOR:  Good morning, Your Honor.  Robert

 4    Spector for the Government.

 5              THE COURT:  And for the --

 6              MR. MOSCOWITZ:  Good morning, Your Honor.  Attorney

 7    Michael Moskowitz.  Sitting next to me is -- I'm using her as

 8    an interpreter, an actual body as an interpreter, just for me,

 9    for my own concern.  Her name is Shay Klein (ph.).  She is

10    with Advanced Investigation.  She is to my left, to your

11    right, Your Honor.

12              THE COURT:  Okay.  So when you're -- when we're off

13    the record, you wish to use her.

14              MR. MOSCOWITZ:  Right.

15              THE COURT:  Okay.  Because I can't --

16              MR. MOSCOWITZ:  Because I know that --

17              THE COURT:  I can't use her -- we have to be very

18    careful to not speak over each other today and to speak slowly

19    because we have an interpreter.  So let me just say, I have an

20    interpreter for the on-the-record proceedings, and I can't use

21    a different interpreter without them being sworn.  So I just

22    want to confirm that the person you have with you, you wish to

23    use in case you need to have an off-the-record conversation.

24              MR. MOSCOWITZ:  That's absolutely correct.  For

25    private conversations, Your Honor.

Colloquy

1          THE COURT:  Okay.

2          MR. MOSCOWITZ:  And my client, Mr. Crespo is to my

3     left, to your right, Your Honor.  Also known as Mr. Escalante.

4          THE COURT:  All right.  Thank you.

5          MR. MOSCOWITZ:  And I apologize.  There was

6     confusion.  I thought I was going to actually get a physical

7     interpreter or a person, and I didn't realize that it was not

8     going to come.  That we were going to be using the phone.

9          THE COURT:  Okay.  So after we're done, we should

10    talk off the record about that system.  It does allow for

11    private conversations.  We have a separate headset, and we can

12    speak with Ms. Freberg about how that works, but that will be

13    the default system.

14          Mr. Crespo, are you able to -- and Mr. Moscowitz,

15    have your client stand when we speak so he -- the microphone

16    captures him.

17          Mr. Crespo, are you able to understand the

18    interpreter?  You don't need to hold that up.  It's okay.

19          THE DEFENDANT:  Yes, yes.

20          THE COURT:  And, Madam Interpreter, are you able to

21    understand Mr. Crespo?

22          THE INTERPRETER:  So far so good, Your Honor.

23          THE COURT:  And do you prefer Mr. Crespo, rather than

24    Escalante?

25          THE DEFENDANT:  Mr. Crespo will be fine.

Colloquy

1          THE COURT:  All right, thank you.

2          You could be seated.  If I could have counsel at

3    sidebar for just a moment, please.

4          (Off-the-record discussion at sidebar)

5          THE COURT:  All right.  We're going to begin the

6    proceedings with discussion of a request that the Government

7    and the defense counsel have made for me to address an issue.

8          Mr. Spector, are you seeking to seal this portion of

9    the hearing today?

10          MR. SPECTOR:  Yes, Your Honor.  I have a written

11    motion if I can --

12          THE COURT:  If you could hand that up, that would be

13    great.

14          MR. SPECTOR:  Thank you, Your Honor.  Part of the

15    motion requires me to sign it under oath here.  Could I do

16    that now?

17          THE COURT:  Yes.

18          MR. SPECTOR:  Or should I hand it up first?

19          THE COURT:  Well, let me swear you.

20          Do you affirm that the information in this motion is

21    true and correct to the best of your knowledgeability?

22          MR. SPECTOR:  Yes, Your Honor.

23          THE COURT:  All right.

24          (Pause)

25          Mr. Moscowitz, have you seen this motion to seal

Colloquy

1    previously?

2              MR. MOSCOWITZ:  Yes, Your Honor.

3              THE COURT:  Okay.  And do you have any objection?

4              MR. MOSCOWITZ:  No objection, Your Honor.  And I'm

5    just going to indicate for the record, there is another

6    individual who I did not --

7              THE COURT:  All right.  Hang on.  All right.  I have

8    here, written motion to seal, based on the representations in

9    the motion, in Mr. Spector's affidavit, I find that sealing is

10   proper and that the request to seal only a portion of this

11   proceedings narrowly tailors the sealing to protect the

12   interests at stake.  So I will grant the motion to seal the

13   next portion.

14             (Proceedings under seal begin at 10:35 a.m.)

15             THE COURT:  All right.  We're here today because Mr.

16   Crespo has indicated that he would like to waive his right to

17   indictment and enter a guilty plea to a one-count information.

18   Count I of the information charges him with conspiracy to

19   possess with intent to distribute and distribution -- or to

20   distribute fentanyl in violation of Sections 841(a)(1),

21   841(b)(1)(C) and 846 of Title 21 of the United States Code.

22             Is that to your understanding, Mr. Spector?

23             MR. SPECTOR:  Yes, Your Honor.

24             THE COURT:  And Mr. Moscowitz?

25             MR. MOSCOWITZ:  Yes, Your Honor.

Colloquy

1          THE COURT:  All right.  So Mr. Crespo, I want to

2     start by reviewing your rights with you.  You have the right

3     to remain silent, means you're not required to make any

4     statements to anyone about this case.  If you do choose to

5     make a statement, anything you say can and very likely will be

6     used in this case or otherwise against you.  If you've already

7     made a statement, you don't need to continue.  If you start

8     speaking, you can stop at any time.  And if you choose to make

9     a statement, you have the right to have your attorney with

10    you.  Do you understand those rights?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  All right.  You also have a right to

13    counsel at every stage of the process.  Mr. Moscowitz is

14    currently representing you, but if for any reason he is unable

15    to represent you in the future, you just need to let us know,

16    and we'll make sure you have an attorney even if the court

17    needs to pay the attorney's fees for you.  Do you understand

18    that?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  All right.  So I'm going to need to ask

21    you a number of questions today, under oath, to ensure that if

22    you do enter a plea of guilty that there is a factual basis

23    for your plea.  And therefore, I'm going to ask the clerk to

24    place you under oath at this time.

25               MR. CRESPO, DEFENDANT, SWORN

                              Colloquy

 1           THE COURT:  All right.  So now that you are under

 2   oath, your answers must be truthful, or you could be subject

 3   to the penalties or perjury or for making a false statement.

 4   Do you understand that?

 5           THE DEFENDANT:  Yes, Your Honor.

 6           THE COURT:  All right.  If I say something you don't

 7   understand, if you need me to repeat anything or you need a

 8   moment to talk to Mr. Moscowitz at any point, just let me

 9   know.  Okay?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  All right.  Can you tell me how old you

12   are?

13           THE DEFENDANT:  Forty-seven years old.

14           THE COURT:  And how far have you gone in school so

15   far?

16           THE DEFENDANT:  I finished high school, and I took

17   some courses for veterinary medicine.

18           THE COURT:  Have you had any drugs or alcohol in the

19   last twenty-four hours?

20           THE DEFENDANT:  Never in my life.

21           THE COURT:  And while you're in custody, are you

22   receiving any medical care or any counselling?

23           THE DEFENDANT:  I received medical attention because

24   I ate -- well, I was told it was poisoned food.  So I was

25   under observation for twenty-four hours for food poisoning.

Colloquy

1          THE COURT:  Okay.  Do you feel okay now?

2          THE DEFENDANT:  Yes.  Yes.

3          THE COURT:  And are you taking any medications now?

4          THE DEFENDANT:  I am just taking medication due to a

5     vaccine that I was given at the medical center.  I was told

6     that the treatment lasts six months, but that is all.

7          THE COURT:  Okay.  So I'm asking all those questions

8     to make sure your mind is clear and you can understand me

9     okay.  Are you able to understand me okay today with the help

10    of the interpreter?

11         THE DEFENDANT:  Yes, very well.

12         THE COURT:  Now, I'm a United States Magistrate

13    Judge, and you have a right to have this hearing with a United

14    States District Judge.  Judge Thompson just isn't available

15    today, and so we arranged for you all to come to see me,

16    really just because it was convenient.  But you have a right

17    to have this hearing with Judge Thompson or you can consent,

18    agree, to have the hearing with me.  Have you talked to Mr.

19    Moscowitz about that issue at all?

20         MR. MOSCOWITZ:  We did, Your Honor.  May I just have

21    a moment with him?

22         THE COURT:  Sure.

23         MR. MOSCOWITZ:  I just said it a different way.  With

24    all apology, I indicated you're not a judge, Your Honor.

25    We're having a problem with the -- interpreting magistrate.

Colloquy

1   Magistrate to him --

2          THE COURT:  Well, I am a judge.

3          MR. MOSCOWITZ:  Right, but I'm indicating --

4          THE COURT:  Hence, the robe.

5          MR. MOSCOWITZ: -- without any disrespect, that's how

6   we were explaining magistrate to him.

7          THE COURT:  Okay.  Well, it's magistrate judge and

8   perhaps, I can explain it.

9          MR. MOSCOWITZ:  Fine, Your Honor.

10          THE COURT:  So under the constitution of the United

11   States, felony cases are heard by what is called, district

12   judges.  The difference between district judges and magistrate

13   judges is the way they are the selected and the term that they

14   serve.  District judges, like Judge Thompson, have lifetime

15   appointment.  Magistrate judges, like me, have to reapply for

16   this job every eight years.  So the idea is that a judge with

17   a lifetime appointment will not worry about criticism about

18   his decisions or he doesn't have to reapply for the job.  And

19   that's why we make sure that in felony cases, all of the

20   sentences are imposed by judges with lifetime appointment

21   who'd never have to reapply for their job.

22          And because this is a felony, you have a right to

23   have this proceeding about whether you should be convicted of

24   the case also in front of a district judge.  But with your

25   consent, a magistrate judge, like me, can have the hearing.

Colloquy

1    If we have a hear, I'll prepare what's called a finding and

2    recommendation.  It will be a written report to Judge Thompson

3    that tells him if I think you have been properly advised of

4    everything you need to know, and if your guilty plea should be

5    accepted.  But you can choose to agree to have me do this, and

6    if you don't agree then Judge Thompson will have the hearing

7    on another date.

8                THE DEFENDANT:  Yes.  I agree that's fine.

9                THE COURT:  Okay.  All right.  So if you agree to

10   proceed with me, there is a form that -- Mr. Moscowitz, if you

11   can read that out -- it's a very short statement, out loud so

12   that the interpreter can translate it for Mr. Crespo?

13               MR. MOSCOWITZ:  "The caption matter was referred to

14   the undersigned by Judge Alvin W. Thompson for a hearing on a

15   proposed waiver indictment.  The Defendant hereby waives his

16   right to hold this hearing before a United States District

17   Judge and consents to have the colloquy required by federal

18   rule of criminal procedure 11, conducted by a United States

19   Magistrate Judge.  The Defendant affirms that he has discussed

20   this matter with his counsel and that he gives his consent

21   knowingly and voluntarily.  The Government joins in this

22   consent to proceed before a United States Magistrate Judge."

23               THE COURT:  All right.  Do you agree with that, Mr.

24   Crespo?

25               THE DEFENDANT:  Yes.  Yes, Your Honor.

Colloquy

1          THE COURT:  All right.  In that case, the parties may

2     execute the form.

3          MR. MOSCOWITZ:  I won't give my definition anymore,

4     Your Honor.  I was trying to make it as simple as possible

5     (indiscernible).

6          THE COURT:  I understand.

7          All right.  I have here a consent received before

8     magistrate judge.  It has been signed by Mr. Crespo, by Mr.

9     Moscowitz and by Mr. Spector.  I will sign off on it, and

10     we'll move forward.

11          All right.  Mr. Spector, before we go any further, I

12     need to inquire whether there are any parties who have rights

13     in this proceeding under 18 U.S. Code 3771?

14          MR. SPECTOR:  There are none.  Thank you, Your Honor.

15          THE COURT:  All right.  Thank you.

16          All right.  So Mr. Crespo, your attorney has

17     indicated that you wish to waive your right to indictment and

18     plead guilty to what's called an information.  Now, under

19     federal law, a felony charge like this one can only proceed to

20     a trial or a guilty plea if either an information, which we

21     have now, or an indictment has been filed.

22          An indictment is a charge that's issued by the grand

23     jury.  A grand jury is made up of between sixteen and twenty-

24     three people, and they are drawn from the community where they

25     sit.  The Government presents its' evidence to the grand jury,

Colloquy

1    and if at least twelve members of the grand jury, find there

2    is probable cause to believe a crime was committed and that

3    you committed, the grand jury returns an indictment.  If the

4    grand jury finds there is not probable cause to believe you

5    committed a crime, then no charge is filed.  So you have the

6    right to go through that process.  You have the right to

7    require the Government to present its' evidence to the grand

8    jury and to have at least twelve grand jurors find probable

9    cause to believe you committed this offense.  You also have a

10   right to have that grand jury made up of a fair cross-section

11   of the community where the grand jury sits.  And you would

12   have the right to challenge the grand jury if you thought it

13   was unfairly constituted.

14          So your attorney has indicated that you're ready to

15   proceed by what we call an information.  And that's where the

16   parties say, there's no need to go before the grand jury

17   because we agree there is probable cause to file this charge.

18   So have you had a chance to talk to Mr. Moscowitz about the

19   grand jury process and your right to indictment?

20          THE DEFENDANT:  Yes.  I have had time to talk to him

21   and --

22          THE COURT:  Have you had a chance to talk with Mr.

23   Moscowitz about your right to proceed before the grand jury?

24          THE DEFENDANT:  Yes.  I talked to him about that.

25          THE COURT:  All right.  And do you understand that

Colloquy

1   right?

2           THE DEFENDANT:  Yes.  I understand it.

3           THE COURT:  All right.  And do you want to waive that

4   right and instead have an information filed for this charge?

5           THE DEFENDANT:  Yes.

6           THE COURT:  All right.

7           Mr. Moscowitz, have you discussed this issue with Mr.

8   Crespo?

9           MR. MOSCOWITZ:  Yes, Your Honor.

10          THE COURT:  And in your opinion, does he understand

11  the rights he'll be waiving if he waives his right to

12  indictment?

13          MR. MOSCOWITZ:  Yes, Your Honor.

14          THE COURT:  All right.  In that case, if you wish to

15  execute the form.  Again, I'll ask Mr. Moscowitz just to read

16  aloud the content of that -- it's like a one-sentence

17  statement there.

18          MR. MOSCOWITZ:  "I understand that I have been

19  accused of one or more offenses punishable by imprisonment for

20  more than one year.  I was advised in open court my rights and

21  the nature of the proposed charges against me.  After

22  receiving this advice, I waived my right to prosecution by

23  indictment and consent to prosecution by information."

24          THE COURT:  All right.  Do you agree with that, Mr.

25  Crespo?

Colloquy

 1              THE DEFENDANT:  Yes, Your Honor.

 2              THE COURT:  All right.  In that case, you can sign

 3      the form.

 4              THE DEFENDANT:  Yes.

 5              MR. MOSCOWITZ:  May I approach the clerk, Your Honor?

 6              THE COURT:  Yes.  Thank you.  I know there are a lot

 7      of papers that we're making you sign today.

 8              MR. MOSCOWITZ:  I already told him, no more forms.

 9              THE COURT:  It's just that these are important

10      matters, and we want to always make sure you understand every

11      step of the way.

12              THE DEFENDANT:  Yes, Your Honor.

13              THE COURT:  All right.  I have here the waiver of

14      indictment form which I have signed off on.

15              Mr. Spector, do you have the original information for

16      filing?

17              MR. SPECTOR:  Yes, Your Honor.

18              THE COURT:  You can hand that up.

19              And for the record, this case will be assigned case

20      number 3:17-CR-68.

21              All right, so Mr. Moscowitz, other than the language

22      barrier, have you had any trouble communicating with Mr.

23      Crespo?

24              MR. MOSCOWITZ:  No, Your Honor.

25              THE COURT:  Do you believe he understands the rights

Colloquy

1   he'll be waiving if he pleads guilty?

2           MR. MOSCOWITZ:  Yes, Your Honor.

3           THE COURT:  And do you have any doubts at all as to

4   his competence?

5           MR. MOSCOWITZ:  No, Your Honor.

6           THE COURT:  All right.  Mr. Crespo, have you had

7   enough time to talk about this case with your attorney?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  And has he answered any questions you

10  have had?

11          THE DEFENDANT:  Yes, Your Honor.  Every single one of

12  them.

13          THE COURT:  Good.  And are you satisfied to have him

14  represent you?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  All right.  Have you received a copy of

17  the charge, the information?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  And do you understand what you're charged

20  with?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Okay.  So the most important thing for

23  you to understand is that you don't have to plead guilty.

24  That's why we came here, but you're not required to do that.

25  Under American law, the Government always has the burden of

Colloquy

1    proving a defendant guilty, beyond a reasonable doubt.  And if

2    the Government is unable to meet its' burden, a jury has an

3    obligation to find the defendant, not guilty.  So it sometimes

4    happens that there's a trial and the jury comes back with a

5    verdict of not guilty.  Even though everybody watching, maybe

6    even the people in the case, believe the defendant actually

7    committed the crime.  What the jury can be saying in those

8    cases is not that the defendant is innocent, but that the

9    Government has failed to meet its' burden of proving each

10   element of the offense beyond a reasonable doubt.  Do you

11   understand the difference there?

12            THE DEFENDANT:  Yes, Your Honor.

13            THE COURT:  Okay.  So that's why I'm saying, even if

14   you're actually guilty, we never require you to plead guilty,

15   and you have a right to plead not guilty.

16            So I want to review with you what your rights would

17   be if you plead not guilty and went to trial.  You would have

18   the right to a speedy public trial before a jury.  You would

19   have a right to participate through Mr. Moscowitz in the

20   selection of that jury and to object to potential jurors

21   serving.  You have the right to be represented by an attorney

22   at every stage and to have the court appoint an attorney for

23   you, as we have in this case.

24            During the trial, you have what's called, your right

25   of confrontation.  And that means the Government would be

Colloquy

1   required to call its' witnesses to come and testify in person

2   before you in the courtroom.  And Mr. Moscowitz would have the

3   right to cross-examine those witnesses and to object to any

4   evidence the Government offers.

5           When the Government was done offering its' evidence,

6   you would have a choice.  You could offer evidence of your own

7   and you could use the power of the court, the subpoena power

8   of the court, to require witnesses who had relevant evidence

9   to come to court and testify.

10          And you would have a choice about whether you chose

11  to testify or not.  You could take the stand and testify at

12  your trial.  But because of your right to remain silent, you

13  could not be required to testify and if you chose not to

14  testify, Judge Thompson would instruct the jury that they

15  could not hold that against you in deciding whether you were

16  guilty or not.

17          At the end of the trial and throughout the trial, you

18  would be presumed innocent unless the Government proves you

19  guilty.  If the jury found that the Government had proven each

20  element of the offense beyond a reasonable doubt, they would

21  have a duty to find you guilty.  If they found the Government

22  had not proven each element of the offense beyond a reasonable

23  doubt, they would have a duty to find you not guilty.

24          Those are your basic trial rights.  Do you understand

25  those rights?

Colloquy

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  If you plead guilty today, we

3     won't have a trial, and you'll have to give a limited waiver

4     of your right to remain silent because I'll need to ask you

5     questions about what you did to assure myself that you're

6     actually guilty of the crime you're pleading guilty to.  Do

7     you understand that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And if you plead guilty today, we will

10    have no trial and no jury, and you will have no right to

11    appeal the fact of your conviction.  And that's because if you

12    stand here before me with your lawyer under oath and you tell

13    me that you're guilty, that closes the question of whether

14    you're guilty or not.  So unless we've done something

15    fundamentally wrong or illegal in the process today, if you

16    say guilty when we ask you, that will close the question of

17    your guilt or innocence, and you'll have no right to appeal

18    it.  Do you understand that?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  All right.  If you are found guilty

21    either by a plea or after a trial, you can also lose some

22    rights.  These are called the collateral consequences of the

23    guilty plea.  So you could lose the right to vote, to hold

24    public office, or to serve on a jury.  And because this is a

25    felony, you would lose the right to possess any kind of

Colloquy

1   firearm or ammunition and the possession of firearms or

2   ammunitions is a separate federal crime.  You could lose

3   certain federal benefits, particularly because this is a drug

4   conviction.  A DNA sample will be collected from you for

5   analysis and indexing.  The Government would reserve the right

6   to notify any agencies that you have a license from and to

7   notify any employer of the fact of your conviction.

8           So those are what we call the collateral

9   consequences.  Do you understand those?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.  Mr. Moscowitz, is it a matter

12  of record whether Mr. Crespo is a United States citizen?

13          MR. MOSCOWITZ:  It's not -- Your Honor, he is not a

14  United States citizen.

15          THE COURT:  All right.  So Mr. Crespo, because you

16  are not a United States citizen, your conviction in this

17  matter will almost certainly result in your being removed from

18  the United States and prohibited from re-entering.  So I'm not

19  an immigration judge.  We don't do that in this court, and an

20  immigration judge will be the person who decides that but

21  based on the charge, it appears to me to be a mandatory

22  removal charge.  That is, you need to assume that your

23  conviction will result in your being removed from the country

24  and prohibited from re-entering.  Do you understand that?

25          THE DEFENDANT:  Yes, Your Honor.

Colloquy

 1                THE COURT:  All right.  So we talked about what your

 2       trial rights would be if you plead not guilty, and we talked

 3       about the consequences of a guilty plea.  Are you prepared to

 4       go forward with the guilty plea at this time?

 5                THE DEFENDANT:  Yes, Your Honor.

 6                THE COURT:  All right.  And when we ask you later,

 7       how you plead, if you plead guilty, whose choice is that?

 8                THE DEFENDANT:  I am making that decision, Your

 9       Honor.

10                THE COURT:  Okay.  Thank you.  All right.  I gather

11       there is a written plea agreement.

12                MR. MOSCOWITZ:  Your Honor, could I just add this to

13       the record --

14                THE COURT:  Sure.

15                MR. MOSCOWITZ: -- it's just his immigration status.

16       He is legal -- he is legally documented to be in this country.

17       I just want to make sure that's on the record.

18                THE COURT:  Okay.  For the record, it's -- my reading

19       of the immigration law that that doesn't change the

20       consequences.

21                MR. MOSCOWITZ:  It doesn't change the consequences,

22       but it does change his status -- I'm just going to saying it

23       for the record.

24                THE COURT:  I understand.  So I am required to advise

25       him under Second Circuit law, not only that it's possible but

Colloquy

1   if it is appears to the court to be a mandatory removal, I am

2   required to advise him of that.

3          MR. MOSCOWITZ:  And I told him that.

4          THE COURT:  Okay.  All right.  I'm going to ask you

5   to be seated, and I'm going to ask Mr. Spector to summarize

6   the agreement.  I want you to listen carefully because when

7   he's done, I'm going to ask you if the agreement he's

8   described is the agreement you believe you have with the

9   Government.

10          Mr. Spector, if you can begin with the elements and

11  you can skip over any advice of rights I've already provided.

12          MR. SPECTOR:  Yes, Your Honor.  And Your Honor, I

13  apologize there was one last-minute change that I'll flag when

14  we get there.

15          THE COURT:  Thank you.

16          MR. SPECTOR:  Your Honor, as you noted the agreement,

17  which is dated today -- I think you noted this -- is nine

18  pages long.  On page 1, Mr. Crespo is agreeing to plead

19  guilty, waive his right to be indicted I should say, and plead

20  guilty to Count I of the information.  The charge is that he

21  conspired to possess with the intent to distribute and also to

22  distribute fentanyl which is a schedule II controlled

23  substance, violation of Title 21 U.S. Code Section is

24  841(a)(1), 841(b)(1)(C) and 846.

25          The elements of the offense are at the bottom --

Colloquy

1   excuse me, at the bottom of page 1, top of page 2 which are

2   first that in December 2016 there was a conspiracy between two

3   or more persons to possess with the intent to distribute a

4   controlled substance, in this case it was fentanyl.  The

5   second element at the top of page 2, is that Mr. Crespo

6   knowingly, willfully, and voluntarily became a participant in

7   that conspiracy.

8          The maximum statutory penalties are set forth in the

9   middle of page 2.  And then the sentencing guidelines are

10  discussed at the bottom of page 2.  The part that I'll

11  highlight is that Mr. Crespo is agreeing that the sentencing

12  court will make factual findings by preponderance of the

13  evidence standard, and he will not be able to withdraw his

14  guilty plea if he is unhappy with the guideline calculation or

15  his sentence.

16         On page 3, the Government is recommending a three-

17  level reduction for Mr. Crespo's prompt acceptance of

18  responsibility.  And then at the bottom of page 3, Mr. Crespo

19  is agreeing that the quantity of fentanyl that he possessed

20  with the intent to distribute or conspired to distribute was

21  approximately 25 kilograms.  And he waives any right to a jury

22  trial or sentencing hearing on that issue.

23         On page 4, there's a guideline stipulation set out

24  which is based on that quantity stipulation as well as the

25  acceptance of responsibility reduction and the fact that Mr.

Colloquy

1    Crespo falls in criminal history category I as far as the

2    parties have calculated it right now.  And that would leave us

3    at a total offense level of 33 and a guideline range of 135 to

4    168 months in jail and a fine range of 35,000 to 350,000

5    dollars.  Both parties are reserving their rights to argue for

6    sentences above or below those ranges either by departures

7    under the guidelines or variances.

8            The top of page 5, Mr. Crespo is waiving his right to

9    appeal or collaterally attack his conviction and his sentence,

10   provided that his sentence does not exceed 168 months in

11   prison, a life term of supervised release, a 100-dollar

12   special assessment and a 350,000-dollar fine, regardless of

13   how the court calculates the sentence.

14           At the bottom of page 5 and then going into page 6

15   are a list of rights that Mr. Crespo is waiving.  Your Honor,

16   has reviewed his right to indictment.  He is also waiving the

17   trial rights that you reviewed.  In addition, in the middle of

18   page 6, he's waiving his right to challenge the prosecution as

19   time barred, should the conviction later be vacated.

20           And then the added section is at the bottom of page

21   6.  It's standard language for somebody who does have

22   immigration consequences.  And essentially, what it says is

23   that he recognizes that there's a broad range of crimes that

24   could result in his removal from the country if he pleads

25   guilty, but that the immigration consequences are subject to a

Colloquy

 1   separate proceeding and that no one here, his attorney, Your

 2   Honor, no one can predict the effect the conviction -- this

 3   conviction would have on his immigration status.

 4        He's agreeing that he wants to plea guilty,

 5   regardless of any immigration consequences that might result

 6   and he understands that -- this is now at the top of page 7 --

 7   he understands that he's bound by this guilty plea, regardless

 8   of the immigration consequences or any advice that he received

 9   about them.  So that if, for example, he were removed after

10   this case is over, he wouldn't be able to come back and move

11   to vacate his conviction, claiming that he didn't understand

12   that that could happen.

13        In the middle of page 7, he's acknowledging that he's

14   pleading guilty knowingly and voluntarily and because he is

15   guilty.

16        And then on page 8, the collateral consequences

17   section again, was amended just to add that collateral

18   consequence of immigration.  And right in the middle there, it

19   talks about the fact that because he's not a citizen, removal

20   might be a collateral consequence of the conviction.

21        And then at the bottom of page 8 or near the bottom,

22   the Government is agreeing that by pleading guilty to the

23   charge in the information, Mr. Crespo is satisfying his

24   federal criminal liability in Connecticut as a result of his

25   conduct which forms the basis for the charge.

Colloquy

1          THE COURT:  All right.

2          MR. SPECTOR:  Thank you, Your Honor.

3          THE COURT:  Thank you.

4          Mr. Crespo, does the agreement that Mr. Spector has

5    described, does that fully reflect your understanding of the

6    agreement you have with the Government?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Did anything he said come as a surprise

9    to you?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  Other than the promises that have been

12    written down, set down in writing, has anyone made any

13    promises to you that have caused you to plead guilty?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  Has anyone threatened you in any way to

16    persuade you to plead guilty?

17          THE DEFENDANT:  No, Your Honor.

18          THE COURT:  And has anyone promised you what your

19    sentence will be?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  All right.  So as Mr. Spector noted, it's

22    important for you to understand that whatever comes next, if

23    Judge Thompson does not accept the guidelines calculation in

24    this plea agreement, whatever his sentence is and whatever the

25    immigration consequences are, you may have rights to argue or

Colloquy

1  to appeal, but you will not have a right to come back and

2  withdraw your guilty plea.  Do you understand that?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  All right.  If the parties are prepared

5  to sign the plea agreement, you can do that now and file it

6  with the clerk.

7          (Pause)

8          MR. MOSCOWITZ:  May I approach the clerk, Your Honor?

9          THE COURT:  Yes.  Thank you.

10          All right.  I have here an agreement that takes the

11  form of a letter from Mr. Spector to Mr. Moscowitz.  It is in

12  nine pages.  I'm adding the case number to the first page, and

13  it has been signed on page 9 by Mr. Spector, by Mr. Crespo,

14  and by Mr. Moscowitz.

15          All right.  I want to talk with you now about the

16  maximum potential sentence that could be imposed in your case.

17  This information is on page 2 of the plea agreement.  So the

18  offense charged in the information carries a maximum prison

19  term of twenty years.  In addition to any term of

20  imprisonment, you will also be required to serve a term of

21  supervised release which is like probation and that must be a

22  minimum of three years and as much as the remainder of your

23  life.  If you violate any condition of your supervised

24  release, the court could sentence you to up to two years

25  additional time in prison, potentially for each violation.

Colloquy

1         Do you understand those prison and supervised release

2 maximum penalties?

3         THE DEFENDANT:  Yes, Your Honor.

4         THE COURT:  All right.  You could be fined up to one

5 million dollars.  And if Judge Thompson does impose a fine of

6 more than 2,500 dollars, interest will be charged on the fine,

7 starting 15 days after it is imposed.  And finally, the court

8 is required to impose what's called a special assessment, like

9 a court fee, of one hundred dollars.

10         So those are the maximum and minimum penalties in

11 this case.  Do you understand those?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  So if you are convicted either by

14 pleading guilty today or after a trial of this charge, what's

15 the longest term of imprisonment that Judge Thompson could

16 impose?

17         THE DEFENDANT:  Twenty years.

18         THE COURT:  Right.  All right.  So that's what we --

19 that's the statutory sentencing provisions.  There's another

20 set of rules that apply to sentencing and that's called the

21 sentencing guidelines.  So before your sentencing, a probation

22 officer will prepare a pre-sentence report or a PSR.  To do

23 that, they'll interview you and you'll have the assistance of

24 an interpreter and Mr. Moscowitz will be with you.  They may

25 talk to some of your friends or family members.  They'll look

Colloquy

1   into your background, and they'll write basically a story of

2   your life.  And that's because the sentencing law requires

3   Judge Thompson to consider your history and characteristics in

4   determining the appropriate sentence.

5          The PSR will also include information about the

6   offense.  So the probation officer will talk to the agents or

7   the prosecutor and include that information as well.  And

8   that's because Judge Thompson is also required to consider the

9   nature and circumstances of the offense.

10         So the probation officer will put all that

11  information together, will do their own analysis of the

12  guidelines, and they'll consider the plea agreement, but they

13  would to do their own calculation.  And then they'll also

14  consider whether they believe a sentence above or below or

15  within the guidelines is appropriate.

16         They'll prepare a draft version of that report, and

17  it will be provided to you and to Mr. Moscowitz and to the

18  Government.  And you'll have a chance to review that and to

19  make any comments or objections to that report.  After those

20  comments and objections are made, there'll be a final report

21  prepared.  And it's only after you have that opportunity to

22  suggest changes that Judge Thompson will see a final report.

23         So Judge Thompson will have the plea agreement's

24  analysis of the guidelines, and he'll have the pre-sentence

25  report analysis of the guidelines, but he will have to

Colloquy

1    determine on his own what he believes the guidelines call for.

2    He has to figure them out, and he has to consider them, but he

3    doesn't have to follow them.

4         So the guidelines are only guidelines.  They are not

5    binding on Judge Thompson.  So he will consider any disputes

6    between the parties, and he will decide those by himself -- we

7    won't bring in a jury -- by the standard called preponderance

8    of the evidence.  And at the end of that process, he'll make a

9    finding about the appropriate sentence, taking into account

10   the factors in the statute called 18 U.S. Code 3553(a).

11        So there's a lot of work to be done between now and

12   Judge Thompson's decision.  And the reason it's so important

13   to understand that is that we don't know today, we genuinely

14   don't know today, what your sentence will be.  I don't think

15   you have been in front of Judge Thompson at all yet; is that

16   right?

17        MR. MOSCOWITZ:  Never, Your Honor.

18        THE COURT:  So he hasn't even met you.  And so that's

19   why we say there's a lot to be decided between now and your

20   sentencing, and Judge Thompson might give you a sentence

21   that's higher or lower than anybody's expecting.  And you may

22   have the right to appeal, and you'll certainly have a right to

23   argue what you think the appropriate sentence is, but you

24   won't be able to withdraw your guilty plea if you disagree

25   with the sentence or the way it was calculated.

Colloquy

1    So do you understand generally that sentencing

2    process?

3           THE DEFENDANT:  Yes, Your Honor.  I understand it.

4           THE COURT:  Do you have any questions for me or for

5    Mr. Moscowitz at this point?

6           THE DEFENDANT:  No.  None.

7           THE COURT:  Okay.  Mr. Moscowitz, have you and Mr.

8    Crespo talked about possibilities of what kind of sentence he

9    might receive?

10          MR. MOSCOWITZ:  Yes, Your Honor.  Possibilities.

11          THE COURT:  And do you understand Mr. Crespo, that

12   even though Mr. Moscowitz is very experienced, his predictions

13   are just that.  They are your hopes maybe or what you may ask

14   for, but he does not know today what your sentence will be.

15   Do you understand that?

16          THE COURT:  Yes, I understand it.

17          THE COURT:  Okay.  All right.  Let's talk about your

18   appeal rights.  So we talked earlier about the fact that when

19   you plead guilty, you generally have no right to appeal the

20   conviction because you stood before a judge under oath and

21   said you were guilty.  But you may have a right to appeal your

22   sentence.  If you do have any appeal, it needs to be filed

23   within two weeks of your sentencing, and if you're unable to

24   pay for an appeal, the court will simply file it for you, and

25   we can appoint counsel for you, as we have here.

Colloquy

1          Now, in your plea agreement, you've agreed to limit

2     your right to appeal.  And this is on the top of page 5.  So

3     you have agreed you will not appeal or collaterally attack

4     your conviction in any way, and you've agreed you will not

5     appeal or collaterally attack the sentence as long as it falls

6     within certain guidelines.  So as long as the sentence is not

7     more than 168 months in prison, which is 14 years, a lifetime

8     term of supervised release, a 100-dollar special assessment,

9     and a 350,000-dollar fine, you have agreed not to appeal the

10    sentence.

11         So if the sentence is fourteen years or less and

12    those other terms, no matter how Judge Thompson gets there,

13    you have agreed you will not appeal the sentence.  Do you

14    understand that?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  And you've also agreed that you won't

17    collaterally attack your sentence.  That means, you won't

18    bring a claim that your sentence or your conviction was

19    unlawful.  Do you understand that?

20         THE DEFENDANT:  Yes, Your Honor, I do.

21         THE COURT:  All right.  And did you discuss this

22    waiver with Mr. Moscowitz before today?

23         THE INTERPRETER:  Your Honor, could Your Honor,

24    repeat?  The interpreter couldn't hear.  The voice faded out.

25         THE COURT:  Sorry, I leaned back.  Did you discuss

Colloquy

1   this waiver with Mr. Moscowitz before today?

2          THE INTERPRETER:  Yes, Your Honor.

3          THE COURT:  Do you understand your right to appeal

4   your sentence?

5          THE DEFENDANT:  Yes, Your Honor.  I understand it.

6          THE COURT:  All right.  Has anyone promised you

7   anything to get you to limit that right?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  And has anyone threatened you in any way

10  to persuade you to limit your appeal rights?

11         THE DEFENDANT:  No, Your Honor.

12         THE COURT:  All right.  We're now going to turn to

13  the guilty plea.  When Mr. Spector described the plea

14  agreement, he started with what we call the elements of the

15  offense.  And the elements are the facts a jury has defined if

16  it intends to find a defendant guilty at trial, and they're

17  also the facts the judge has to find in order to accept guilty

18  plea.

19         I'm going to ask you in a moment to tell me in your

20  own words what you did that makes you guilty of this charge,

21  but if you need a moment to talk to Mr. Moscowitz you can have

22  that.  Do you need any time to talk to Mr. Moscowitz before I

23  ask you that question?

24         THE DEFENDANT:  Yes, Your Honor, a minute.

25         THE COURT:  Okay.

Colloquy

1          (Pause)

2          THE COURT:  All right.  Mr. Crespo, please tell me in

3    your own words what you did that makes you guilty of the

4    charge in the information?

5          THE DEFENDANT:  Your Honor, I brought in directly in

6    my own vehicle an amount of 25 kilos of fentanyl, a type of

7    drug.  And that is why I am pleading guilty.

8          THE COURT:  Okay.  And did you know that the

9    substance you had in your vehicle was fentanyl?

10         THE DEFENDANT:  I didn't know it was fentanyl, but I

11   did know that it was a type of drug.

12         THE COURT:  Okay.  Mr. Moscowitz, do you --

13         MR. MOSCOWITZ:  I was going -- he knew it was an

14   illegal drug.

15         THE COURT:  Is that right, Mr. Crespo?

16         THE DEFENDANT:  Yes.  It's a type of drug that is

17   illegal.

18         THE COURT:  Okay.  Mr. Spector, would the Government

19   like to proffer its' evidence?

20         MR. SPECTOR:  Yes, Your Honor.

21         THE COURT:  All right.  So Mr. Crespo, you can be

22   seated.  And Mr. Spector is going to tell us what the evidence

23   would be from the Government about this case if we went to

24   trial.  So I'm going to ask you to listen carefully, and then

25   you can consult with Mr. Moscowitz, and you can let me know if

Colloquy

1  anything -- if you disagree with anything Mr. Spector says.

2  Okay?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Mr. Spector?

5          MR. SPECTOR:  Thank you, Your Honor.

6          Your Honor, if the case against Mr. Crespo were to go

7  to trial, the Government would prove the following through the

8  testimony of law enforcement officers, at least one

9  cooperating witness, and then the submission of bank records,

10 toll records, and seized narcotics.  And that would be as

11 follows:

12         That in December of 2016, the DEA here in

13 Connecticut, in New Haven, was actively working with a

14 confidential informant who was providing them with reliable

15 information that they had corroborated on a variety of

16 different cases.  Based on information directly from that

17 informant, the DEA was expecting a shipment, a large shipment

18 of either heroin or fentanyl to come into Connecticut

19 somewhere in late December of 2016.

20         And then as they got closer to December 21st, the

21 information they received was it would be on December 21st,

22 2016, and specifically that it would be in a tractor trailer

23 that was essentially in the Orange, Connecticut area.  They

24 identified -- based on the confidential informant's

25 information, they identified a specific tractor trailer

Colloquy

1    driving on I-95, and they -- working with task force officers

2    that they have and different police departments, essentially,

3    they began following that tractor trailer.

4              As the tractor trailer got into Derby and the DEA

5    does have officers -- I should say task force officers, both

6    from Shelton and Derby Police Departments, the tractor trailer

7    essentially crossed -- failed to stay in its' lane and was

8    pulled over by a patrol officer, a Derby patrol officer and

9    cited for failing to stay in its' lane which is actually a

10   Connecticut general statute, Section 14-236, that was the

11   citation.

12             When the tractor trailer which had an Arizona

13   registration which was in Mr. Escalante -- was in the name of

14   Erick Escalante -- both the truck and the trailer were

15   registered to him.  When it was pulled over, then the Derby

16   patrol officer approached, immediately saw a box sitting on

17   the passenger front seat of the truck.  Mr. Crespo was acting

18   a little nervous, seemed a little confused about where he was

19   going, where he was coming from -- bless you.  The officer

20   asked about the box.  At that point, Mr. Escalante, sort of

21   cursed and said, you can have it, which also -- and started to

22   act even a little more nervous and that sort of raised the

23   officer's concerns even more.  So they asked him to exit the

24   vehicle and to talk with them at the rear of the truck.

25             At the same time, they asked a Shelton police K-9

Colloquy

1    handler to respond, and as they were talking with Mr. Crespo

2    at the rear of the truck, the K-9 Unit essentially walked

3    around the truck, alerted on that area of the driver side door

4    and the front cab portion of the vehicle.  Based on that alert

5    which is typical, they put the dog inside and the dog --

6    inside the cab and the dog alerted on the box itself.  And of

7    course, that's the same box that they had asked him about when

8    he was pulled over.

9            They then took the box out and opened it, and it

10   contained twenty-five brick-like packages, each of which

11   was -- had markings on it, were sealed up.  They weighed about

12   fifty-five pounds.  They were later lab tested and contained

13   fentanyl, and no other controlled substance other than

14   fentanyl.  For these drugs, it was eight percent fentanyl.

15   That's about twice the strength of what you'd say would be a

16   typical street level of fentanyl.  If you were to seize it in

17   a package -- you know, a small package.

18           They did actually, while this is happening, call the

19   dispatcher.  This is -- Mr. Crespo was engaged in also what

20   you'd call, legitimate trucking business.  He had just

21   delivered, I think it was alcohol to a location in Orange and

22   so -- which was what he was supposed to be doing.  When they

23   talked to his dispatcher, the dispatcher said he had failed

24   essentially to check in which he's supposed to do after

25   leaving that last stop in Orange, which was again something

Colloquy

1    that was off.

2          On scene, Mr. Crespo said the package wasn't his.

3    When they interviewed him and provided him with his Miranda

4    warnings, he admitted that he had picked up the package from

5    an unidentified person in California, travelled first to

6    Baltimore, and then was directed to a specific address in

7    Waterbury, Connecticut, which is where he was heading when he

8    was pulled over.  And he also mentioned the fact that he had

9    made that Orange delivery which was not something that

10   involved narcotics.  There was a search of the back portion --

11   I don't know what we call these things -- the cab and the

12   trailer.  A search warrant issued on that.  Nothing else was

13   found other than the kilos in the box.

14          THE COURT:  All right.  Mr. Moscowitz, please confer

15   with Mr. Crespo and find out whether there's anything Mr.

16   Spector has said with which he disagrees.

17          MR. MOSCOWITZ:  He agrees, Your Honor.

18          THE COURT:  All right.  Mr. Crespo, do you agree with

19   everything Mr. Spector just said?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  All right.  There's one thing I should

22   inquire because this is a conspiracy case, one of the elements

23   is that you agreed with others to possess this substance.  So

24   was there at least one other person involved in this process?

25          THE DEFENDANT:  Yes, Your Honor.

Colloquy

```
 1              THE COURT:  All right.  Mr. Spector, would you have
 2    me inquire any further?
 3              MR. SPECTOR:  No, Your Honor.  Thank you.
 4              THE COURT:  All right.  So you've told me you have a
 5    copy of the information there, I believe?
 6              MR. MOSCOWITZ:  Yes, Your Honor.
 7              THE COURT:  All right.  So you have a right to have
 8    me read the charge out loud to me.  But because you told me
 9    you have a copy, you can waive a reading of the charge.  Has
10    it been read to you in Spanish before?
11              MR. MOSCOWITZ:  It has not, Your Honor.
12              THE COURT:  It's not very long.
13              MR. MOSCOWITZ:  I could read it.
14              THE COURT:  I'll just read it to you, all right?
15              THE DEFENDANT:  Yes.
16              THE COURT:  Count I charges you as follows:  In or
17    about December of 2016 in the District of Connecticut and
18    elsewhere, the Defendant, Erick Crespo-Escalante together with
19    others known and unknown, knowingly and intentionally
20    conspired together and with one another to possess with intent
21    to distribute and to distribute a mixture and substance
22    containing a detectable amount of fentanyl, a schedule II
23    controlled substance, contrary to the provisions of Title 21
24    United States Code Sections 841(a)(1) and 841(b)(1)(C), all in
25    violation of Title 21 United States Code Section 846.
```

Colloquy

1      I will now ask the clerk to take your plea to Count I

2   of the information which I have just read.

3      THE CLERK:  In the matter of the United States of

4   America v. Erick Crespo-Escalante, case number 3:17-CR-68,

5   assigned to Judge Thompson, as to Count I of the information

6   charging you with violation of Title 21 United States Code

7   Section 846, what is your plea?

8      THE DEFENDANT:  Guilty.

9      THE CLERK:  Your Honor, the defendant has plead

10  guilty to Count I of the information.

11     THE COURT:  Okay.  On the basis of the answers given

12  to me by Mr. Crespo under oath on the record today with the

13  assistance of his counsel, remarks of defense counsel and the

14  remarks of the Assistant United States Attorney, I find as

15  follows:

16     The Defendant is competent to plead, he knows his

17  trial rights, he knows the maximum potential sentence that

18  could be imposed, he knows the court will make its' own

19  determination about the sentencing guidelines and he'll give

20  the guidelines due weight.  He understands he will not be

21  permitted to withdraw his plea if the calculation of the

22  sentencing guidelines or the sentence imposed is different

23  than he expected, and he understands his right to appeal his

24  sentence as limited by the plea agreement.  I also find there

25  is a factual basis for the defendant's plea and he is entering

Colloquy

1    the plea voluntarily, knowingly, and at his own free will.

2    During the course of today's proceedings, I have prepared a

3    finding and recommendation which I will submit to Judge

4    Thompson for his approval, and the case will be referred to

5    the probation office for a presentence investigation.

6         MR. MOSCOWITZ:  Your Honor, I don't mean to

7    interrupt, but would the Court take an oral motion?  We're

8    asking that the dates be suspended at this point.

9         THE COURT:  I think -- I'm not sure I can suspend

10   them without Judge Thompson weighing in on that.  I can

11   certainly give a continuance to start with of say, sixty days,

12   if that's appropriate.  And then you all could file a motion

13   with Judge Thompson.  I don't want to presume to suspend them

14   fully without him being aware.

15        MR. MOSCOWITZ:  Then we'd ask for a continuance of

16   sixty days, Your Honor.

17        THE COURT:  All right.  So Mr. Crespo, under our

18   local rules, ordinarily we schedule a sentencing for eighty-

19   four days, twelve weeks from the date of the guilty plea.

20   What Mr. Moscowitz is suggesting is that in this case, we

21   might -- the parties might need some additional time to

22   prepare for sentencing.  And therefore, I suggested a

23   continuance of sixty days.  And so you have a right under our

24   rules to proceed to sentencing in eighty-four days.  Mr.

25   Moscowitz is suggesting and Mr. Spector, I believe, agrees,

Colloquy

1    that an extension of that period of at least sixty days is

2    appropriate.

3              Do you need to talk to Mr. Moscowitz about that at

4    all?

5              THE DEFENDANT:  No.

6              THE COURT:  All right.  Do you agree to delay your

7    sentencing, sixty days?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Any objection, Mr. Spector?

10             MR. SPECTOR:  No, Your Honor.

11             THE COURT:  All right.  What I'll do is prepare an

12   order for a pre-sentence investigation that contemplates a

13   sentencing date in, it will be in August or September at that

14   point.  Well, it's currently set for June 22nd.  What I'll do

15   is, I'll take eighty-four days, and I'll add sixty days and

16   I'll figure out a date that falls in that time frame that

17   works for Judge Thompson.  And if you all want to seek a

18   further continuance, you should file an appropriate motion

19   with Judge Thompson.

20             So at some point, Mr. Crespo, in the near future, Mr.

21   Moscowitz will arrange for an interview with the probation

22   office, and they'll prepare the pre-sentence report

23   accordingly.

24             I understand that Mr. Crespo is detained.  Is there

25   any application at this time to change that status?

Colloquy

 1          MR. MOSCOWITZ:  None that I know of, Your Honor.

 2          THE COURT:  Well, it would come from you, right?  So

 3   no application.  All right.

 4          All right.  So I'm not going to say a sentencing date

 5   verbally because I need to figure that out.  But I will file a

 6   detailed scheduling order with a sentencing date in the range

 7   of 144 days from now.

 8          Any other business we need to attend to from your

 9   perspective, Mr. Moscowitz?

10          MR. MOSCOWITZ:  No, Your Honor.

11          THE COURT:  Mr. Spector?

12          MR. SPECTOR:  No, Your Honor.

13          THE COURT:  Do you have any questions, Mr. Crespo?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  All right.  Thank you all.  We'll stand

16   in recess.

17          MR. SPECTOR:  Thank you.

18          THE CLERK:  All rise.  The Honorable United States

19   District Court is now in recess.

20          THE COURT:  Thank you, Madame Interpreter.

21          (Whereupon the above matter was concluded at 11:52

22   o'clock, a.m.)

23

24

25

1                    C E R T I F I C A T I O N

2

3              I, Pessy Kaufman, Official Court Transcriber for the

4    United States District Court for the District of Connecticut,

5    do hereby certify that the foregoing pages are a true and

6    accurate transcription of the proceedings in the

7    aforementioned matter to the best of my skill and ability.

8

9

10   Date: January 14, 2018

11

12

13

14   _____

15                    PESSY KAUFMAN

16                    eScribers, LLC
                 352 Seventh Avenue, Ste. #604
17                   New York, NY 10001
                      (973)406-2250
18              operations@escribers.net

19

20

21

22

23

24

25

UNITED STATES OF AMERICA V.
ERICK CRESPO-ESCALANTE

April 4, 2017

## A

**able (7)**
5:14,17,20;10:9;
24:13;26:10;31:24
**above (3)**
25:6;30:14;44:21
**absolutely (1)**
4:24
**accept (2)**
27:23;34:17
**acceptance (2)**
24:17,25
**accepted (1)**
12:5
**according (1)**
3:6
**accordingly (1)**
43:23
**account (1)**
31:9
**accused (1)**
15:19
**acknowledging (1)**
26:13
**act (1)**
37:22
**acting (1)**
37:17
**action (1)**
3:4
**actively (1)**
36:13
**actual (1)**
4:8
**actually (6)**
5:6;18:6,14;20:6;
37:9;38:18
**add (3)**
22:12;26:17;43:15
**added (1)**
25:20
**adding (1)**
28:12
**addition (2)**
25:17;28:19
**additional (2)**
28:25;42:21
**address (2)**
6:7;39:6
**admitted (1)**
39:4
**Advanced (1)**
4:10
**advice (1)**
15:22;23:11;26:8
**advise (2)**
22:24;23:2
**advised (2)**
12:3;15:20
**affidavit (1)**
7:9

**affirm (1)**
6:20
**affirms (1)**
12:19
**Again (3)**
15:15;26:17;38:25
**against (4)**
8:6;15:21;19:15;
36:6
**agencies (1)**
21:6
**agents (1)**
30:6
**agree (10)**
10:18;12:5,6,8,9,23;
14:17;15:24;39:18;
43:6
**agreed (7)**
33:1,3,4,9,13,16;
39:23
**agreeing (5)**
23:18;24:11,19;26:4,
22
**agreement (15)**
22:11;23:6,7,8,16;
27:4,6,24;28:5,10,17;
30:12;33:1;34:14;
41:24
**agreement's (1)**
30:23
**agrees (2)**
39:17;42:25
**alcohol (2)**
9:18;38:21
**alert (1)**
38:4
**alerted (2)**
38:3,6
**allow (1)**
5:10
**almost (1)**
21:17
**aloud (1)**
15:16
**Alvin (1)**
12:14
**always (2)**
16:10;17:25
**amended (1)**
26:17
**America (1)**
41:4
**American (1)**
17:25
**ammunition (1)**
21:1
**ammunitions (1)**
21:2
**amount (2)**
35:6;40:22
**analysis (4)**
21:5;30:11,24,25
**answered (1)**

17:9
**anymore (1)**
13:3
**apologize (2)**
5:5;23:13
**apology (1)**
10:24
**appeal (18)**
20:11,17;25:9;28:1;
31:22;32:18,19,21,22,
24;33:2,3,5,9,13;34:3,
10;41:23
**appear (1)**
3:5
**appearances (1)**
4:1
**appears (2)**
21:21;23:1
**application (1)**
43:25;44:3
**apply (1)**
29:20
**appoint (2)**
18:22;32:25
**appointment (3)**
11:15,17,20
**approach (2)**
16:5;28:8
**approached (1)**
37:16
**appropriate (7)**
30:4,15;31:9,23;
42:12;43:2,18
**approval (1)**
42:4
**approximately (1)**
24:21
**area (2)**
36:23;38:3
**argue (3)**
25:5;27:25;31:23
**Arizona (1)**
37:12
**around (1)**
38:3
**arrange (1)**
43:21
**arranged (1)**
10:15
**assessment (3)**
25:12;29:8;33:8
**assigned (2)**
16:19;41:5
**assistance (1)**
29:23;41:13
**Assistant (1)**
41:14
**assume (1)**
21:22
**assure (1)**
20:5
**ate (1)**
9:24

**attack (4)**
25:9;33:3,5,17
**attend (1)**
44:8
**attention (2)**
3:6;9:23
**Attorney (10)**
4:6;8:9,16;13:16;
14:14;17:7;18:21,22;
26:1;41:14
**attorney's (1)**
8:17
**August (1)**
43:13
**available (1)**
10:14
**aware (1)**
42:14

## B

**back (5)**
18:4;26:10;28:1;
33:25;39:10
**background (1)**
30:1
**Baltimore (1)**
39:6
**bank (1)**
36:9
**barred (1)**
25:19
**barrier (1)**
16:22
**based (6)**
7:8;21:21;24:24;
36:16,24;38:4
**basic (1)**
19:24
**basically (1)**
30:1
**basis (4)**
8:22;26:25;41:11,25
**became (1)**
24:6
**began (1)**
37:3
**begin (3)**
6:5;7:14;23:10
**Beginning (1)**
4:2
**believes (1)**
31:1
**below (2)**
25:6;30:14
**benefits (1)**
21:3
**best (1)**
6:21
**beyond (4)**
18:1,10;19:20,22
**binding (1)**
31:5

**bless (1)**
37:19
**body (1)**
4:8
**Both (3)**
25:5;37:5,14
**bottom (8)**
23:25;24:1,10,18;
25:14,20;26:21,21
**bound (2)**
3:5;26:7
**box (6)**
37:16,20;38:6,7,9;
39:13
**brick-like (1)**
38:10
**bring (2)**
31:7;33:18
**broad (1)**
25:23
**brought (1)**
35:5
**burden (3)**
17:25;18:2,9
**business (2)**
38:20;44:8

## C

**cab (3)**
38:4,6;39:11
**calculated (2)**
25:2;31:25
**calculates (1)**
25:13
**calculation (4)**
24:14;27:23;30:13;
41:21
**California (1)**
39:5
**call (8)**
14:15;19:1;21:8;
31:1;34:14;38:18,20;
39:11
**called (9)**
11:11;12:1;13:18;
18:24;20:22;29:8,20;
31:7,10
**came (1)**
17:24
**can (30)**
5:11;6:11;8:5,8;
9:11;10:8,17;11:8,25;
12:5,11,12;13:19;16:2,
18;18:7;20:21;23:10,
11;26:2;28:5;32:25;
34:21;35:21,25,25;
37:21;40:9;42:9,10
**caption (1)**
12:13
**captures (1)**
5:16
**care (1)**

9:22
**careful (1)**
4:18
**carefully (2)**
23:6;35:24
**carries (1)**
28:18
**case (23)**
4:23;8:4,6;11:24;
13:1;15:14;16:2,19,19;
17:7;18:6,23;24:4;
26:10;28:12,16;29:11;
35:23;36:6;39:22;41:4;
42:4,20
**cases (4)**
11:11,19;18:8;36:16
**category (1)**
25:1
**cause (4)**
14:2,4,9,17
**caused (1)**
27:13
**causes (1)**
3:4
**center (1)**
10:5
**certain (2)**
21:3;33:6
**certainly (1)**
21:17;31:22;42:11
**challenge (2)**
14:12;25:18
**chance (3)**
14:18,22;30:18
**change (5)**
22:19,21,22;23:13;
43:25
**changes (1)**
30:22
**characteristics (1)**
30:3
**charge (16)**
13:19,22;14:5,17;
15:4;17:17;21:21,22;
23:20;26:23,25;29:14;
34:20;35:4;40:8,9
**charged (3)**
17:19;28:18;29:6
**charges (3)**
7:18;15:21;40:16
**charging (1)**
41:6
**check (1)**
38:24
**checking (1)**
3:24
**choice (3)**
19:6,10;22:7
**choose (3)**
8:4,8;12:5
**chose (2)**
19:10,13
**Circuit (1)**

22:25
**circumstances (1)**
30:9
**citation (1)**
37:11
**cited (1)**
37:9
**citizen (4)**
21:12,14,16;26:19
**claim (1)**
33:18
**claiming (1)**
26:11
**clear (1)**
10:8
**CLERK (10)**
3:2,21;8:23;16:5;
28:6,8;41:1,3,9;44:18
**client (2)**
5:2,15
**close (1)**
20:16
**closer (1)**
36:20
**closes (1)**
20:13
**Code (7)**
7:21;13:13;23:23;
31:10;40:24,25;41:6
**collateral (5)**
20:22;21:8;26:16,17,
20
**collaterally (4)**
25:9;33:3,5,17
**collected (1)**
21:4
**colloquy (1)**
12:17
**coming (1)**
37:19
**comments (2)**
30:19,20
**committed (5)**
14:2,3,5,9;18:7
**communicating (1)**
16:22
**community (2)**
13:24;14:11
**competence (1)**
17:4
**competent (1)**
41:16
**concern (1)**
4:9
**concerns (1)**
37:23
**concluded (1)**
44:21
**condition (1)**
28:23
**conduct (1)**
26:25
**conducted (1)**

12:18
**confer (1)**
39:14
**confidential (2)**
36:14,24
**confirm (1)**
4:22
**confrontation (1)**
18:25
**confused (1)**
37:18
**confusion (1)**
5:6
**Connecticut (8)**
3:3;26:24;36:13,18,
23;37:10;39:7;40:17
**consent (6)**
10:17;11:25;12:20,
22;13:7;15:23
**consents (1)**
12:17
**consequence (2)**
26:18,20
**consequences (11)**
20:22;21:9;22:3,20,
21;25:22,25;26:5,8,16;
27:25
**consider (6)**
30:3,8,12,14;31:2,5
**conspiracy (4)**
7:18;24:2,7;39:22
**conspired (3)**
23:21;24:20;40:20
**constituted (1)**
14:13
**constitution (1)**
11:10
**consult (1)**
35:25
**contained (2)**
38:10,12
**containing (1)**
40:22
**contemplates (1)**
43:12
**content (1)**
15:16
**continuance (4)**
42:11,15,23;43:18
**continue (1)**
8:7
**contrary (1)**
40:23
**controlled (4)**
23:22;24:4;38:13;
40:23
**convenient (1)**
10:16
**conversation (1)**
4:23
**conversations (2)**
4:25;5:11
**convicted (2)**

11:23;29:13
**conviction (14)**
20:11;21:4,7,16,23;
25:9,19;26:2,3,11,20;
32:20;33:4,18
**cooperating (1)**
36:9
**copy (3)**
17:16;40:5,9
**corroborated (1)**
36:15
**counsel (8)**
4:1;6:2,7;8:13;
12:20;32:25;41:13,13
**counselling (1)**
9:22
**Count (6)**
7:18;23:20;40:16;
41:1,5,10
**country (3)**
21:23;22:16;25:24
**course (2)**
38:7;42:2
**courses (1)**
9:17
**Court (153)**
3:3,8,12,17,18,22;
4:1,5,12,15,17;5:1,4,9,
20,23;6:1,5,12,17,19,
23;7:3,7,15,24;8:1,12,
16,20;9:1,6,11,14,18,
21;10:1,3,7,12,22;11:2,
4,7,10;12:9,23;13:1,6,
15;14:22,25;15:3,6,10,
14,20,24;16:2,6,9,13,
18,25;17:3,6,9,13,16,
19,22;18:13,22;19:7,8,
9;20:2,9,20;21:11,15,
19;22:1,6,10,14,18,24;
23:1,4,15;24:12;25:13;
27:1,3,8,11,15,18,21;
28:4,9,24;29:4,7,9,13,
18;31:18;32:4,7,11,16,
17,24;33:16,21,25;
34:3,6,9,12,25;35:2,8,
12,15,18,21;36:4;
39:14,18,21;40:1,4,7,
12,14,16;41:11,18;
42:7,9,17;43:6,9,11;
44:2,11,13,15,19,20
**courtroom (1)**
19:2
**Crespo (46)**
5:2,14,17,21,23,25;
7:16;8:1,25;12:12,24;
13:8,16;15:8,25;16:23;
17:6;21:12,15;23:18;
24:5,11,18;25:1,8,15;
26:23;27:4;28:13;32:8,
11;35:2,15,21;36:6;
37:17;38:1,19;39:2,15,
18;41:12;42:17;43:20,
24;44:13

**Crespo-Escalante (3)**
3:13;40:18;41:4
**Crespo's (1)**
24:17
**crime (5)**
14:2,5;18:7;20:6;
21:2
**crimes (1)**
25:23
**criminal (3)**
12:18;25:1;26:24
**criticism (1)**
11:17
**crossed (1)**
37:7
**cross-examine (1)**
19:3
**cross-section (1)**
14:10
**currently (2)**
8:14;43:14
**cursed (1)**
37:21
**custody (1)**
9:21

# D

**date (6)**
12:7;42:19;43:13,16;
44:4,6
**dated (1)**
23:17
**dates (1)**
42:8
**days (11)**
29:7;42:11,16,19,23,
24;43:1,7,15,15;44:7
**DEA (3)**
36:12,17;37:4
**December (6)**
24:2;36:12,19,20,21;
40:17
**decide (1)**
31:6
**decided (1)**
31:19
**decides (1)**
21:20
**deciding (1)**
19:15
**decision (2)**
22:8;31:12
**decisions (1)**
11:18
**default (1)**
5:13
**defendant (75)**
3:24;5:19,25;8:11,
19,25;9:5,10,13,16,20,
23;10:2,4,11;12:8,15,
19,25;14:20,24;15:2,5;
16:1,4,12;17:8,11,15,

UNITED STATES OF AMERICA V.
ERICK CRESPO-ESCALANTE

April 4, 2017

18,21;18:1,3,6,8,12;
20:1,8,19;21:10,25;
22:5,8;27:7,10,14,17,
20;28:3;29:3,12,17;
32:3,6;33:15,20;34:5,8,
11,16,24;35:5,10,16;
36:3;39:20,25;40:15,
18;41:8,9,16;43:5,8;
44:14

**defendant's (1)**
41:25

**defense (2)**
6:7;41:13

**defined (1)**
34:15

**definition (1)**
13:3

**delay (1)**
43:6

**delivered (1)**
38:21

**delivery (1)**
39:9

**departments (2)**
37:2,6

**departures (1)**
25:6

**Derby (4)**
37:4,6,8,15

**described (3)**
23:8;27:5;34:13

**detailed (1)**
44:6

**detained (1)**
43:24

**detectable (1)**
40:22

**determination (1)**
41:19

**determine (1)**
31:1

**determining (1)**
30:4

**difference (2)**
11:12;18:11

**different (5)**
4:21;10:23;36:16;
37:2;41:22

**directed (1)**
39:6

**directly (2)**
35:5;36:16

**disagree (2)**
31:24;36:1

**disagrees (1)**
39:16

**discuss (2)**
33:21,25

**discussed (3)**
12:19;15:7;24:10

**discussion (2)**
6:4,6

**dispatcher (3)**

38:19,23,23

**disputes (1)**
31:5

**disrespect (1)**
11:5

**distribute (9)**
7:19,20;23:21,22;
24:3,20,20;40:21,21

**distribution (1)**
7:19

**District (12)**
3:3,3,17,17;10:14;
11:11,12,14,24;12:16;
40:17;44:19

**DNA (1)**
21:4

**documented (1)**
22:16

**dog (3)**
38:5,5,6

**dollars (4)**
25:5;29:5,6,9

**done (5)**
5:9;19:5;20:14;23:7;
31:11

**door (1)**
38:3

**double (1)**
3:24

**doubt (4)**
18:1,10;19:20,23

**doubts (1)**
17:3

**down (2)**
27:12,12

**draft (1)**
30:16

**drawn (1)**
13:24

**driver (1)**
38:3

**driving (1)**
37:1

**drug (5)**
21:3;35:7,11,14,16

**drugs (2)**
9:18;38:14

**due (3)**
3:5;10:4;41:20

**During (2)**
18:24;42:2

**duty (2)**
19:21,23

**E**

**earlier (1)**
32:18

**effect (1)**
26:2

**eight (2)**
11:16;38:14

**eighty- (1)**

42:18

**eighty-four (2)**
42:24;43:15

**either (5)**
13:20;20:21;25:6;
29:13;36:18

**element (4)**
18:10;19:20,22;24:5

**elements (5)**
23:10,25;34:14,15;
39:22

**else (1)**
39:12

**elsewhere (1)**
40:18

**employer (1)**
21:7

**end (2)**
19:17;31:8

**enforcement (1)**
36:8

**engaged (1)**
38:19

**enough (1)**
17:7

**ensure (1)**
8:21

**enter (2)**
7:17;8:22

**entering (1)**
41:25

**Erick (4)**
3:13;37:14;40:18;
41:4

**Escalante (5)**
5:3,24;37:13,14,20

**essentially (6)**
25:22;36:23;37:2,7;
38:2,24

**even (8)**
8:16;18:5,6,13;
31:18;32:12;37:22,23

**everybody (2)**
3:8;18:5

**evidence (10)**
13:25;14:7;19:4,5,6,
8;24:13;31:8;35:19,22

**example (1)**
26:9

**exceed (1)**
25:10

**excuse (1)**
24:1

**execute (2)**
13:2;15:15

**exit (1)**
37:23

**expected (1)**
41:23

**expecting (2)**
31:21;36:17

**experienced (1)**
32:12

**explain (1)**
11:8

**explaining (1)**
11:6

**extension (1)**
43:1

**F**

**fact (6)**
20:11;21:7;24:25;
26:19;32:18;39:8

**factors (1)**
31:10

**facts (2)**
34:15,17

**factual (3)**
8:22;24:12;41:25

**faded (1)**
33:24

**failed (1)**
18:9;37:7;38:23

**failing (1)**
37:9

**fair (1)**
14:10

**falls (3)**
25:1;33:5;43:16

**false (1)**
9:3

**family (1)**
29:25

**far (4)**
5:22;9:14,15;25:1

**federal (5)**
12:17;13:19;21:2,3;
26:24

**fee (1)**
29:9

**feel (1)**
10:1

**fees (1)**
8:17

**felony (5)**
11:11,19,22;13:19;
20:25

**fentanyl (13)**
7:20;23:22;24:4,19;
35:6,9,10;36:18;38:13,
14,14,16;40:22

**fifty-five (1)**
38:12

**figure (3)**
31:2;43:16;44:5

**file (6)**
14:17;28:5;32:24;
42:12;43:18;44:5

**filed (4)**
13:21;14:5;15:4;
32:22

**filing (1)**
16:16

**final (2)**

30:20,22

**finally (1)**
29:7

**find (11)**
7:9;14:1,8;18:3;
19:21,23;34:16,17;
39:15;41:14,24

**finding (3)**
12:1;31:9;42:3

**findings (1)**
24:12

**finds (1)**
14:4

**fine (8)**
5:25;11:9;12:8;25:4,
12;29:5,6;33:9

**fined (1)**
29:4

**finished (1)**
9:16

**firearm (1)**
21:1

**firearms (1)**
21:1

**first (4)**
6:18;24:2;28:12;
39:5

**flag (1)**
23:13

**follow (1)**
31:3

**following (2)**
36:7;37:3

**follows (3)**
36:11;40:16;41:15

**food (2)**
9:24,25

**force (2)**
37:1,5

**form (6)**
12:10;13:2;15:15;
16:3,14;28:11

**forms (2)**
16:8;26:25

**forth (1)**
24:8

**Forty-seven (1)**
9:13

**forward (2)**
13:10;22:4

**found (4)**
19:19,21;20:20;
39:13

**four (1)**
42:19

**fourteen (1)**
33:11

**frame (1)**
43:16

**Freberg (1)**
5:12

**free (1)**
42:1

UNITED STATES OF AMERICA V.
ERICK CRESPO-ESCALANTE

April 4, 2017

**friends (1)**
29:25
**front (4)**
11:24;31:15;37:17;
38:4
**fully (2)**
27:5;42:14
**fundamentally (1)**
20:15
**further (3)**
13:11;40:2;43:18
**future (2)**
8:15;43:20

**G**

**Garcia-Hein (1)**
3:16
**gather (2)**
3:13;22:10
**general (1)**
37:10
**generally (2)**
32:1,19
**genuinely (1)**
31:13
**gets (1)**
33:12
**given (2)**
10:5;41:11
**gives (1)**
12:20
**Good (9)**
3:8,10,11,15,18;4:3,
6;5:22;17:13
**Government (24)**
4:2,4;6:6;12:21;
13:25;14:7;17:25;18:2,
9,25;19:4,5,18,19,21;
21:5;23:9;24:16;26:22;
27:6;30:18;35:18,23;
36:7
**grand (14)**
13:22,23,25;14:1,3,4,
7,8,10,11,12,16,19,23
**grant (1)**
7:12
**great (1)**
6:13
**guideline (3)**
24:14,23;25:3
**guidelines (15)**
24:9;25:7;27:23;
29:21;30:12,15,24,25;
31:1,4,4;33:6;41:19,20,
22
**guilt (1)**
20:17
**guilty (56)**
7:17;8:22;12:4;
13:18,20;17:1,23;18:1,
3,5,14,14,15,17;19:16,
19,21,23;20:2,6,6,9,13,

14,16,20,23;22:2,3,4,7;
23:19,20;24:14;25:25;
26:4,7,14,15,22;27:13,
16;28:2;29:14;31:24;
32:19,21;34:13,16,17,
20;35:3,7;41:8,10;
42:19

**H**

**hand (3)**
6:12,18;16:18
**handler (1)**
38:1
**Hang (1)**
7:7
**happen (1)**
26:12
**happening (1)**
38:18
**happens (1)**
18:4
**Haven (1)**
36:13
**heading (1)**
39:7
**headset (1)**
5:11
**hear (3)**
3:24;12:1;33:24
**heard (1)**
11:11
**hearing (9)**
6:9;10:13,17,18;
11:25;12:6,14,16;
24:22
**help (1)**
10:9
**Hence (1)**
11:4
**hereby (1)**
12:15
**herein (1)**
3:5
**hereof (1)**
3:6
**heroin (1)**
36:18
**high (1)**
9:16
**higher (1)**
31:21
**highlight (1)**
24:11
**himself (1)**
31:6
**history (2)**
25:1;30:3
**hold (4)**
5:18;12:16;19:15;
20:23
**Honor (98)**
3:10,11,15,23;4:3,6,

11,25;5:3,22;6:10,14,
22;7:2,4,23,25;8:11,19;
9:5,10;10:20,24;11:9;
12:25;13:4,14;15:9,13;
16:1,5,12,17,24;17:2,5,
8,11,15,18,21;18:12;
20:1,8,19;21:10,13,25;
22:5,9,12;23:12,12,16;
25:15;26:2;27:2,7,10,
14,17,20;28:3,8;29:3,
12;31:17;32:3,10;
33:15,20,23,23;34:2,5,
8,11,24;35:5,20;36:3,5,
6;39:17,20,25;40:3,6,
11;41:9;42:6,16;43:8,
10;44:1,10,12,14
**Honorable (3)**
3:2,6;44:18
**hopes (1)**
32:13
**hours (2)**
9:19,25
**hundred (1)**
29:9

**I**

**I-95 (1)**
37:1
**idea (1)**
11:16
**identified (2)**
36:24,25
**II (2)**
23:22;40:22
**illegal (3)**
20:15;35:14,17
**immediately (1)**
37:16
**immigration (11)**
21:19,20;22:15,19;
25:22,25;26:3,5,8,18;
27:25
**important (4)**
16:9;17:22;27:22;
31:12
**impose (3)**
29:5,8,16
**imposed (5)**
11:20;28:16;29:7;
41:18,22
**imprisonment (3)**
15:19;28:20;29:15
**include (2)**
30:5,7
**indexing (1)**
21:5
**indicate (1)**
7:5
**indicated (4)**
7:16;10:24;13:17;
14:14
**indicating (1)**

11:3
**indicted (1)**
23:19
**indictment (11)**
7:17;12:15;13:17,21,
22;14:3,19;15:12,23;
16:14;25:16
**indiscernible (1)**
13:5
**individual (1)**
7:6
**informant (2)**
36:14,17
**informant's (1)**
36:24
**information (26)**
6:20;7:17,18;13:18,
20;14:15;15:4,23;
16:15;17:17;23:20;
26:23;28:17,18;30:5,7,
11;35:4;36:15,16,21,
25;40:5;41:2,5,10
**innocence (1)**
20:17
**innocent (2)**
18:8;19:18
**inquire (3)**
13:12;39:22;40:2
**inside (2)**
38:5,6
**instead (1)**
15:4
**instruct (1)**
19:14
**intends (1)**
34:16
**intent (5)**
7:19;23:21;24:3,20;
40:20
**intentionally (1)**
40:19
**interest (1)**
29:6
**interests (1)**
7:12
**interpreter (24)**
3:13,15,16,19,20,23,
23,25;4:8,8,19,20,21;
5:7,18,20,22;10:10;
12:12;29:24;33:23,24;
34:2;44:20
**interpreting (1)**
10:25
**interrupt (1)**
42:7
**interview (2)**
29:23;43:21
**interviewed (1)**
39:3
**into (5)**
25:14;30:1;31:9;
36:18;37:4
**Investigation (3)**

4:10;42:5;43:12
**involved (2)**
39:10,24
**issue (4)**
6:7;10:19;15:7;
24:22
**issued (2)**
13:22;39:12
**its' (10)**
13:25;14:7;18:2,9;
19:1,5;35:19;37:7,9;
41:18

**J**

**jail (1)**
25:4
**job (3)**
11:16,18,21
**joins (1)**
12:21
**Judge (41)**
10:13,14,14,17,24;
11:2,7,14,16,24,25;
12:2,6,14,17,19,22;
13:8;19:14,21;19,20;
27:23;29:5,15;30:3,8,
22,23;31:5,12,15,20;
32:20;33:12;34:17;
41:5;42:3,10,13;43:17,
19
**judges (6)**
11:12,12,13,14,15,20
**June (1)**
43:14
**jurors (2)**
14:8;18:20
**jury (25)**
13:23,23,25;14:1,3,4,
8,10,11,12,16,19,23;
18:2,4,7,18,20;19:14,
19;20:10,24;24:21;
31:7;34:15

**K**

**K-9 (2)**
37:25;38:2
**kilograms (1)**
24:21
**kilos (2)**
35:6;39:13
**kind (2)**
20:25;32:8
**Klein (1)**
4:9
**knew (1)**
35:13
**knowingly (5)**
12:21;24:6;26:14;
40:19;42:1
**knowledgeability (1)**
6:21

UNITED STATES OF AMERICA v.
ERICK CRESPO-ESCALANTE

April 4, 2017

**known (2)**
5:3;40:19
**knows (3)**
41:16,17,18

## L

**lab (1)**
38:12
**lane (2)**
37:7,9
**language (2)**
16:21;25:21
**large (1)**
36:17
**last (2)**
9:19;38:25
**last-minute (1)**
23:13
**lasts (1)**
10:6
**late (1)**
36:19
**later (3)**
22:6;25:19;38:12
**Laura (1)**
3:16
**law (7)**
3:6;13:19;17:25;
22:19,25;30:2;36:8
**lawyer (1)**
20:12
**leaned (1)**
33:25
**least (5)**
14:1;8;36:8;39:24;
43:1
**leave (1)**
25:2
**leaving (1)**
38:25
**left (2)**
4:10;5:3
**legal (1)**
22:16
**legally (1)**
22:16
**legitimate (1)**
38:20
**less (1)**
33:11
**letter (1)**
28:11
**level (3)**
24:17;25:3;38:16
**liability (1)**
26:24
**license (1)**
21:6
**life (4)**
9:20;25:11;28:23;
30:2
**lifetime (4)**
11:14,17,20;33:7
**likely (1)**
8:5
**limit (3)**
33:1;34:7,10
**limited (2)**
20:3;41:24
**line (1)**
3:14
**list (1)**
25:15
**listen (2)**
23:6;35:24
**little (3)**
37:18,18,22
**local (1)**
42:18
**location (1)**
38:21
**long (4)**
23:18;33:5,6;40:12
**longest (1)**
29:15
**look (1)**
29:25
**lose (4)**
20:21,23,25;21:2
**lot (3)**
16:6;31:11,19
**loud (2)**
12:11;40:8
**lower (1)**
31:21

## M

**Madam (1)**
5:20
**Madame (1)**
44:20
**Magistrate (11)**
10:12,25;11:1,6,7,12,
15,25;12:19,22;13:8
**makes (2)**
34:20;35:3
**making (3)**
9:3;16:7;22:8
**mandatory (2)**
21:21;23:1
**markings (1)**
38:11
**matter (8)**
3:12;12:13,20;21:11,
17;33:12;41:3;44:21
**matters (1)**
16:10
**maximum (6)**
24:8;28:16,18;29:2,
10;41:17
**May (9)**
10:20;13:1;16:5;
27:25;28:8;29:24;
31:21;32:13,21
**maybe (2)**
18:5;32:13
**mean (1)**
42:6
**means (3)**
8:3;18:25;33:17
**medical (3)**
9:22,23;10:5
**medication (1)**
10:4
**medications (1)**
10:3
**medicine (1)**
9:17
**meet (2)**
18:2,9
**members (2)**
14:1;29:25
**mentioned (1)**
39:8
**Merriam's (1)**
3:7
**met (1)**
31:18
**Michael (1)**
4:7
**microphone (1)**
5:15
**middle (4)**
24:9;25:17;26:13,18
**might (6)**
26:5,20;31:20;32:9;
42:21,21
**million (1)**
29:5
**mind (1)**
10:8
**minimum (2)**
28:22;29:10
**minute (1)**
34:24
**Miranda (1)**
39:3
**mixture (1)**
40:21
**moment (5)**
6:3;9:8;10:21;34:19,
21
**months (4)**
10:6;25:4,10;33:7
**more (8)**
15:19,20;16:8;24:3;
29:6;33:7;37:22,23
**morning (7)**
3:8,10,11,15,18;4:3,6
**MOSCOWITZ (77)**
3:11;4:6,14,16,24;
5:2,5,14;6:25;7:2,4,24,
25;8:13;9:8;10:19,20,
23;11:3,5,9;12:10,13;
13:3,9;14:18,23;15:7,9,
13,15,18;16:5,8,21,24;
17:2,5;18:19;19:2;
**maybe (2)**
21:11,13;22:12,15,21;
23:3;28:8,11,14;29:24;
30:17;31:17;32:5,7,10,
12;33:22;34:1,21,22;
35:12,13,25;39:14,17;
40:6,11,13;42:6,15,20,
25;43:3,21;44:1,9,10
**Moskowitz (1)**
4:7
**most (1)**
17:22
**motion (10)**
6:11,15,20,25;7:8,9,
12;42:7,12;43:18
**move (2)**
13:10;26:10
**much (1)**
28:22
**must (2)**
9:2;28:21
**myself (1)**
20:5

## N

**name (2)**
4:9;37:13
**narcotics (2)**
36:10;39:10
**narrowly (1)**
7:11
**nature (2)**
15:21;30:9
**near (2)**
26:21;43:20
**Nebraska (1)**
3:17
**need (18)**
4:23;5:18;8:7,15,20;
9:7,7;12:4;13:12;
14:16;20:4;21:22;
34:21,22;42:21;43:3;
44:5,8
**needs (2)**
8:17;32:22
**nervous (2)**
37:18,22
**New (1)**
36:13
**next (3)**
4:7;7:13;27:22
**nine (2)**
23:17;28:12
**none (3)**
13:14;32:6;44:1
**noted (3)**
23:16,17;27:21
**notice (1)**
3:5
**notify (2)**
21:6,7
**number (4)**
8:21;16:20;28:12;
21:11,13;22:12,15,21;
23:3;28:8,11,14;29:24;
30:17;31:17;32:5,7,10,
12;33:22;34:1,21,22;
35:12,13,25;39:14,17;
40:6,11,13;42:6,15,20,
25;43:3,21;44:1,9,10

## O

**oath (7)**
6:15;8:21,24;9:2;
20:12;32:20;41:12
**object (2)**
18:20;19:3
**objection (3)**
7:3,4;43:9
**objections (2)**
30:19,20
**obligation (1)**
18:3
**observation (1)**
9:25
**O'CLOCK (2)**
3:1;44:22
**off (5)**
4:12;5:10;13:9;
16:14;39:1
**offense (10)**
14:9;18:10;19:20,22;
23:25;25:3;28:18;30:6,
9;34:15
**offenses (1)**
15:19
**offer (1)**
19:6
**offering (1)**
19:5
**offers (1)**
19:4
**office (3)**
20:24;42:5;43:22
**officer (7)**
29:22;30:6,10;37:8,
8,16,19
**officers (4)**
36:8;37:1,5,5
**officer's (1)**
37:23
**off-the-record (2)**
4:23;6:4
**old (2)**
9:11,13
**one (14)**
13:19;15:19,20;
17:11;23:13;26:1,2;
29:4,9;36:8;39:21,22,
24;40:20
**one-count (1)**
7:17
**one-sentence (1)**
15:16
**only (5)**
7:10;13:19;22:25;
30:21;31:4
**on-the-record (1)**
4:20
**open (2)**
3:4;15:20

41:4

UNITED STATES OF AMERICA V.
ERICK CRESPO-ESCALANTE

April 4, 2017

**opened (1)**
38:9
**opinion (1)**
15:10
**opportunity (1)**
30:21
**oral (1)**
42:7
**Orange (4)**
36:23;38:21,25;39:9
**order (3)**
34:17;43:12;44:6
**ordinarily (1)**
42:18
**original (1)**
16:15
**others (2)**
39:23;40:19
**otherwise (1)**
8:6
**out (10)**
12:11,11;24:23;31:2;
33:24;38:9;39:15;40:8;
43:16;44:5
**over (7)**
4:18;23:11;26:10;
37:8,15;38:8;39:8
**own (10)**
4:9;19:6;30:11,13;
31:1;34:20;35:3,6;
41:18;42:1
**oyez (3)**
3:2,2,2

**P**

**package (4)**
38:17,17;39:2,4
**packages (1)**
38:10
**page (22)**
23:18;24:1,1,5,9,10,
16,18,23;25:8,14,14,
18,20;26:6,13,16,21;
28:12,13,17;33:2
**pages (2)**
23:18;28:12
**papers (1)**
16:7
**Part (2)**
6:14;24:10
**participant (1)**
24:6
**participate (1)**
18:19
**particularly (1)**
21:3
**parties (8)**
13:1,12;14:16;25:2,
5;28:4;31:6;42:21
**passenger (1)**
37:17
**patrol (3)**

**37:8,8,16**
**Pause (3)**
6:24;28:7;35:1
**pay (2)**
8:17;32:24
**penalties (4)**
9:3;24:8;29:2,10
**pending (1)**
3:4
**people (2)**
13:24;18:6
**percent (1)**
38:14
**perhaps (1)**
11:8
**period (1)**
43:1
**perjury (1)**
9:3
**permitted (1)**
41:21
**person (6)**
4:22;5:7;19:1;21:20;
39:5,24
**persons (2)**
3:4;24:3
**perspective (1)**
44:9
**persuade (2)**
27:16;34:10
**ph (1)**
4:9
**phone (1)**
5:8
**physical (1)**
5:6
**picked (1)**
39:4
**place (1)**
8:24
**plea (31)**
7:17;8:22,23;12:4;
13:20;20:21,23;22:3,4,
11;24:14;26:4,7;27:24;
28:2,5,17;30:12,23;
31:24;33:1;34:13,13,
18;41:1,7,21,24,25;
42:1,19
**plead (17)**
13:18;17:23;18:14,
15,17;20:2,9;22:2,7,7;
23:18,19;27:13,16;
32:19;41:9,16
**pleading (5)**
20:6;26:14,22;29:14;
35:7
**pleads (2)**
17:1;25:24
**Please (5)**
3:8;4:2;6:3;35:2;
39:14
**point (6)**
9:8;32:5;37:20;42:8;

**43:14,20**
**poisoned (1)**
9:24
**poisoning (1)**
9:25
**police (3)**
37:2,6,25
**portion (5)**
6:8;7:10,13;38:4;
39:10
**possess (6)**
7:19;20:25;23:21;
24:3;39:23;40:20
**possessed (1)**
24:19
**possession (1)**
21:1
**possibilities (2)**
32:8,10
**possible (2)**
13:4;22:25
**potential (3)**
18:20;28:16;41:17
**potentially (1)**
28:25
**pounds (1)**
38:12
**power (2)**
19:7,7
**predict (1)**
26:2
**predictions (1)**
32:12
**prefer (1)**
5:23
**prepare (6)**
12:1;29:22;30:16;
42:22;43:11,22
**prepared (4)**
22:3;28:4;30:21;
42:2
**preponderance (2)**
24:12;31:7
**present (1)**
14:7
**presentence (1)**
42:5
**pre-sentence (4)**
29:22;30:24;43:12,
22
**presents (1)**
13:25
**presiding (1)**
3:7
**presume (1)**
42:13
**presumed (1)**
19:18
**previously (1)**
7:1
**prison (5)**
25:11;28:18,25;29:1;
33:7

**private (2)**
4:25;5:11
**probable (4)**
14:2,4,8,17
**probation (6)**
28:21;29:21;30:6,10;
42:5;43:21
**problem (1)**
10:25
**procedure (1)**
12:18
**proceed (6)**
12:10,22;13:19;
14:15,23;42:24
**proceeding (3)**
11:23;13:13;26:1
**proceedings (5)**
4:20;6:6;7:11,14;
42:2
**process (7)**
8:13;14:6,19;20:15;
31:8;32:2;39:24
**proffer (1)**
35:19
**prohibited (2)**
21:18,24
**promised (2)**
27:18;34:6
**promises (2)**
27:11,13
**prompt (1)**
24:17
**proper (1)**
7:10
**properly (1)**
12:3
**proposed (2)**
12:15;15:21
**prosecution (3)**
15:22,23;25:18
**prosecutor (1)**
30:7
**protect (1)**
7:11
**prove (1)**
36:7
**proven (2)**
19:19,22
**proves (1)**
19:18
**provided (4)**
23:11;25:10;30:17;
39:3
**providing (1)**
36:14
**proving (2)**
18:1,9
**provisions (2)**
29:19;40:23
**PSR (2)**
29:22;30:5
**public (2)**
18:18;20:24

**pulled (4)**
37:8,15;38:8;39:8
**punishable (1)**
15:19
**put (2)**
30:10;38:5

**Q**

**quantity (2)**
24:19,24

**R**

**raised (1)**
37:22
**range (4)**
25:3,4,23;44:6
**ranges (1)**
25:6
**rather (1)**
5:23
**read (7)**
12:11;15:15;40:8,10,
13,14;41:2
**reading (2)**
22:18;40:9
**ready (1)**
14:14
**realize (1)**
5:7
**really (1)**
10:16
**reapply (3)**
11:15,18,21
**rear (2)**
37:24;38:2
**reason (2)**
8:14;31:12
**reasonable (4)**
18:1,10;19:20,22
**receive (1)**
32:9
**received (5)**
9:23;13:7;17:16;
26:8;36:21
**receiving (2)**
9:22;15:22
**recess (2)**
44:16,19
**recognizes (1)**
25:23
**recommendation (2)**
12:2;42:3
**recommending (1)**
24:16
**record (10)**
4:13;5:10;7:5;16:19;
21:12;22:13,17,18,23;
41:12
**records (2)**
36:9,10
**reduction (2)**

UNITED STATES OF AMERICA v.
ERICK CRESPO-ESCALANTE

April 4, 2017

24:17,25
**re-entering (2)**
21:18,24
**referred (2)**
12:13;42:4
**reflect (1)**
27:5
**regardless (3)**
25:12;26:5,7
**registered (1)**
37:15
**registration (1)**
37:13
**release (5)**
25:11;28:21,24;29:1;
33:8
**relevant (1)**
19:8
**reliable (1)**
36:14
**remain (3)**
8:3;19:12;20:4
**remainder (1)**
28:22
**remarks (2)**
41:13,14
**removal (4)**
21:22;23:1;25:24;
26:19
**removed (3)**
21:17,23;26:9
**repeat (2)**
9:7;33:24
**report (10)**
12:2;29:22;30:16,19,
20,22,25;43:22
**represent (2)**
8:15;17:14
**representations (1)**
7:8
**represented (1)**
18:21
**representing (1)**
8:14
**request (2)**
6:6;7:10
**require (3)**
14:7;18:14;19:8
**required (10)**
8:3;12:17;17:24;
19:1,13;22:24;23:2;
28:20;29:8;30:8
**requires (2)**
6:15;30:2
**reserve (1)**
21:5
**reserving (1)**
25:5
**respond (1)**
38:1
**responsibility (2)**
24:18,25
**result (5)**

21:17,23;25:24;26:5,
24
**returns (1)**
14:3
**review (2)**
18:16;30:18
**reviewed (2)**
25:16,17
**reviewing (1)**
8:2
**right (123)**
3:22;4:11,14;5:3,4;
6:1,5,23;7:7,7,15,16;
8:1,2,9,12,12,20;9:1,6,
11;10:13,16;11:3,22;
12:9,16,23;13:1,7,11,
15,16,17;14:6,6,10,12,
19,23,25;15:1,3,4,6,11,
14,22,24;16:2,13,21;
17:6,16;18:15,18,19,
21,24;19:3,12;20:2,4,
10,17,20,23,25;21:5,
11,15;22:1,6,10;23:4,
19;24:21;25:2,8,16,18;
26:18;27:1,21;28:1,4,
10,15;29:4,18,18;
31:16,22,22;32:17,19,
21;33:2,21;34:3,6,7,12;
35:2,15,21;39:14,18,
21;40:1,4,7,7,14;41:23;
42:17,23;43:6,11;44:2,
3,4,15
**rights (19)**
8:2,10;13:12;15:11,
20;16:25;18:16;19:24,
25;20:22;22:2;23:11;
25:5,15,17;27:25;
32:18;34:10;41:17
**rise (1)**
44:18
**robe (1)**
11:4
**Robert (1)**
4:3
**rule (1)**
12:18
**rules (3)**
29:20;42:18,24

**S**

**same (2)**
37:25;38:7
**sample (1)**
21:4
**Sarah (1)**
3:7
**satisfied (1)**
17:13
**satisfying (1)**
26:23
**saw (1)**
37:16

**saying (3)**
18:7,13;22:22
**scene (1)**
39:2
**schedule (3)**
23:22;40:22;42:18
**scheduling (1)**
44:6
**school (2)**
9:14,16
**seal (6)**
6:8,25;7:8,10,12,14
**sealed (1)**
38:11
**sealing (2)**
7:9,11
**search (2)**
39:10,12
**seat (1)**
37:17
**seated (4)**
3:9;6:2;23:5;35:22
**Second (2)**
22:25;24:5
**Section (6)**
23:23;25:20;26:17;
37:10;40:25;41:7
**Sections (2)**
7:20;40:24
**seek (1)**
43:17
**seeking (1)**
6:8
**seemed (1)**
37:18
**seize (1)**
38:16
**seized (1)**
36:10
**selected (1)**
11:13
**selection (1)**
18:20
**sentence (29)**
24:15;25:9,10,13;
27:19,24;28:16,24;
30:4,14;31:9,14,20,23,
25;32:8,14,22;33:5,6,
10,11,13,17,18;34:4;
41:17,22,24
**sentences (2)**
11:20;25:6
**sentencing (20)**
24:9,11,22;29:19,20,
21,21;30:2;31:20;32:1,
23;41:19,22;42:18,22,
24;43:7,13;44:4,6
**separate (3)**
5:11;21:2;26:1
**September (1)**
43:13
**serve (3)**
11:14;20:24;28:20

**serving (1)**
18:21
**set (5)**
24:8,23;27:12;29:20;
43:14
**Shay (1)**
4:9
**Shelton (2)**
37:6,25
**shipment (2)**
36:17,17
**short (1)**
12:11
**side (1)**
38:3
**sidebar (2)**
6:3,4
**sign (5)**
6:15;13:9;16:2,7;
28:5
**signed (3)**
13:8;16:14;28:13
**silent (1)**
8:3;19:12;20:4
**simple (1)**
13:4
**simply (2)**
3:24;32:24
**single (1)**
17:11
**sit (1)**
13:25
**sits (1)**
14:11
**Sitting (2)**
4:7;37:16
**six (1)**
10:6
**sixteen (1)**
13:23
**sixty (6)**
42:11,16,23;43:1,7,
15
**skip (1)**
23:11
**slowly (1)**
4:18
**small (1)**
38:17
**somebody (1)**
25:21
**sometimes (1)**
18:3
**somewhere (1)**
36:19
**Sorry (1)**
33:25
**sort (2)**
37:20,22
**Spanish (1)**
40:10
**speak (4)**
4:18,18;5:12,15

**speaking (1)**
8:8
**special (3)**
25:12;29:8;33:8
**specific (2)**
36:25;39:6
**specifically (1)**
36:22
**SPECTOR (41)**
3:10;4:3,4;6:8,10,14,
18,22;7:22,23;13:9,11,
14;16:15,17;23:5,10,
12,16;27:2,4,21;28:11,
13;34:13;35:18,20,22;
36:1,4,5;39:16,19;40:1,
3;42:25;43:9,10;44:11,
12,17
**Spector's (1)**
7:9
**speedy (1)**
18:18
**staff (1)**
3:16
**stage (2)**
8:13;18:22
**stake (1)**
7:12
**stand (4)**
5:15;19:11;20:12;
44:15
**standard (3)**
24:13;25:21;31:7
**start (3)**
8:2,7;42:11
**started (2)**
34:14;37:21
**starting (1)**
29:7
**statement (6)**
8:5,7,9,9:3;12:11;
15:17
**statements (1)**
8:4
**States (20)**
3:3,12,16;7:21;
10:12,14;11:11;12:16,
18,22;21:12,14,16,18;
40:24,25;41:3,6,14;
44:18
**status (4)**
22:15,22;26:3;43:25
**statute (2)**
31:10;37:10
**statutory (2)**
24:8;29:19
**stay (2)**
37:7,9
**step (1)**
16:11
**stipulation (2)**
24:23,24
**stood (1)**
32:20

UNITED STATES OF AMERICA v.
ERICK CRESPO-ESCALANTE

April 4, 2017

**stop (2)**
8:8;38:25
**story (1)**
30:1
**street (1)**
38:16
**strength (1)**
38:15
**subject (2)**
9:2;25:25
**submission (1)**
36:9
**submit (1)**
42:3
**subpoena (1)**
19:7
**substance (7)**
23:23;24:4;35:9;
38:13;39:23;40:21,23
**suggest (1)**
30:22
**suggested (1)**
42:22
**suggesting (2)**
42:20,25
**summarize (1)**
23:5
**summoned (1)**
3:5
**supervised (5)**
25:11;28:21,23;29:1;
33:8
**supposed (2)**
38:22,24
**sure (8)**
8:16;10:8,22;11:19;
16:10;22:14,17;42:9
**surprise (1)**
27:8
**suspend (2)**
42:9,13
**suspended (1)**
42:8
**swear (1)**
6:19
**sworn (4)**
3:19,20;4:21;8:25
**system (2)**
5:10,13

**T**

**tailors (1)**
7:11
**talk (14)**
5:10;9:8;14:18,20,
22;17:7;28:15;29:25;
30:6;32:17;34:21,22;
37:24;43:3
**talked (7)**
10:18;14:24;22:1,2;
32:8,18;38:23
**talking (1)**

**38:1**
**talks (1)**
26:19
**task (2)**
37:1,5
**tells (1)**
12:3
**term (7)**
11:13;25:11;28:19,
19,20;29:15;33:8
**terms (1)**
33:12
**tested (1)**
38:12
**testify (6)**
19:1,9,11,11,13,14
**testimony (1)**
36:8
**therefore (2)**
8:23;42:22
**there'll (1)**
30:20
**Thompson (24)**
10:14,17;11:14;12:2,
6,14;19:14;27:23;29:5,
15;30:3,8,22,23;31:5,
15,20;33:12;41:5;42:4,
10,13;43:17,19
**Thompson's (1)**
31:12
**though (2)**
18:5;32:12
**thought (2)**
5:6;14:12
**threatened (2)**
27:15;34:9
**three (2)**
13:24;28:22
**three- (1)**
24:16
**throughout (1)**
19:17
**Title (5)**
7:21;23:23;40:23,25;
41:6
**today (18)**
4:18;6:9;7:15;8:21;
10:9,15;16:7;20:2,9,
15;23:17;29:14;31:13,
14;32:14;33:22;34:1;
41:12
**today's (1)**
42:2
**together (3)**
30:11;40:18,20
**told (6)**
9:24;10:5;16:8;23:3;
40:4,8
**toll (1)**
36:10
**took (2)**
9:16;38:9
**top (5)**

24:1,5;25:8;26:6;
33:2
**total (1)**
25:3
**tractor (6)**
36:22,25;37:3,4,6,12
**trailer (8)**
36:22,25;37:3,4,6,12,
14;39:12
**translate (1)**
12:12
**travelled (1)**
39:5
**treatment (1)**
10:6
**trial (20)**
13:20;18:4,17,18,24;
19:12,17,17,24;20:3,
10,21;22:2;24:22;
25:17;29:14;34:16;
35:24;36:7;41:17
**trouble (1)**
16:22
**truck (5)**
37:14,17,24;38:2,3
**trucking (1)**
38:20
**true (1)**
6:21
**truthful (1)**
9:2
**trying (1)**
13:4
**turn (1)**
34:12
**twelve (3)**
14:1,8;42:19
**twenty (2)**
28:19;29:17
**twenty- (1)**
13:23
**twenty-five (1)**
38:10
**twenty-four (2)**
9:19,25
**twice (1)**
38:15
**two (3)**
24:2;28:24;32:23
**type (3)**
35:6,11,16
**typical (2)**
38:5,16

**U**

**unable (3)**
8:14;18:2;32:23
**under (17)**
6:15;7:14;8:21,24;
9:1,25;11:10;13:13,18;
17:25;20:12;22:25;
25:7;32:20;41:12;

42:17,23
**undersigned (1)**
12:14
**understands (5)**
16:25;26:6,7;41:20,
23
**unfairly (1)**
14:13
**unhappy (1)**
24:14
**unidentified (1)**
39:5
**Unit (1)**
38:2
**United (20)**
3:2,12,16;7:21;
10:12,13;11:10;12:16,
18,22;21:12,14,16,18;
40:24,25;41:3,6,14;
44:18
**unknown (1)**
40:19
**unlawful (1)**
33:19
**unless (2)**
19:18;20:14
**up (10)**
5:18;6:12,18;13:23;
14:10;16:18;28:24;
29:4;38:11;39:4
**use (5)**
4:13,17,20,23;19:7
**used (1)**
8:6
**using (2)**
4:7;5:8

**V**

**vacate (1)**
26:11
**vacated (1)**
25:19
**vaccine (1)**
10:5
**variances (1)**
25:7
**variety (1)**
36:15
**vehicle (4)**
35:6,9;37:24;38:4
**verbally (1)**
44:5
**verdict (1)**
18:5
**version (1)**
30:16
**veterinary (1)**
9:17
**violate (1)**
28:23
**violation (5)**
7:20;23:23;28:25;

40:25;41:6
**voice (1)**
33:24
**voluntarily (4)**
12:21;24:6;26:14;
42:1
**vote (1)**
20:23

**W**

**waive (5)**
7:16;13:17;15:3;
23:19;40:9
**waived (1)**
15:22
**waiver (5)**
12:15;16:13;20:3;
33:22;34:1
**waives (3)**
12:15;15:11;24:21
**waiving (6)**
15:11;17:1;25:8,15,
16,18
**walked (1)**
38:2
**wants (1)**
26:4
**warnings (1)**
39:4
**warrant (1)**
39:12
**watching (1)**
18:5
**Waterbury (1)**
39:7
**way (7)**
10:23;11:13;16:11;
27:15;31:25;33:4;34:9
**weeks (2)**
32:23;42:19
**weighed (1)**
38:11
**weighing (1)**
42:10
**weight (1)**
41:20
**what's (5)**
12:1;13:18;18:24;
29:8,14
**Whereupon (1)**
44:21
**who'd (1)**
11:21
**whose (1)**
22:7
**who've (1)**
3:4
**willfully (1)**
24:6
**wish (4)**
4:13,22;13:17;15:14
**withdraw (4)**

24:13;28:2;31:24;
41:21
**within (3)**
  30:15;32:23;33:6
**without (4)**
  4:21;11:5;42:10,14
**witness (1)**
  36:9
**witnesses (3)**
  19:1,3,8
**words (2)**
  34:20;35:3
**work (1)**
  31:11
**working (2)**
  36:13;37:1
**works (2)**
  5:12;43:17
**worry (1)**
  11:17
**write (1)**
  30:1
**writing (1)**
  27:12
**written (5)**
  6:10;7:8;12:2;22:11;
  27:12
**wrong (1)**
  20:15

---

**Y**

**year (1)**
  15:20
**years (8)**
  9:13;11:16;28:19,22;
  24;29:17;33:7,11

---

**1**

**1 (2)**
  23:18;24:1
**10:29 (1)**
  3:1
**10:35 (1)**
  7:14
**100-dollar (2)**
  25:11;33:8
**11 (1)**
  12:18
**135 (1)**
  25:3
**14 (1)**
  33:7
**14-236 (1)**
  37:10
**144 (1)**
  44:7
**15 (1)**
  29:7
**168 (3)**
  25:4,10;33:7
**18 (2)**

---

13:13;31:10

---

**2**

**2 (5)**
  24:1,5,9,10;28:17
**2,500 (1)**
  29:6
**2016 (5)**
  24:2;36:12,19,22;
  40:17
**21 (5)**
  7:21;23:23;40:23,25;
  41:6
**21st (2)**
  36:20,21
**22nd (1)**
  43:14
**25 (2)**
  24:21;35:6

---

**3**

**3 (2)**
  24:16,18
**3:17-CR-68 (2)**
  16:20;41:4
**33 (1)**
  25:3
**35,000 (1)**
  25:4
**350,000 (1)**
  25:4
**350,000-dollar (2)**
  25:12;33:9
**3553a (1)**
  31:10
**3771 (1)**
  13:13

---

**4**

**4 (1)**
  24:23

---

**5**

**5 (3)**
  25:8,14;33:2

---

**6**

**6 (3)**
  25:14,18,21

---

**7**

**7 (2)**
  26:6,13

---

**8**

**8 (2)**

---

26:16,21
**841a1 (3)**
  7:20;23:24;40:24
**841b1C (3)**
  7:21;23:24;40:24
**846 (4)**
  7:21;23:24;40:25;
  41:7

---

**9**

**9 (1)**
  28:13