UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:17CR68 (AWT) |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| ERICK CRESPO-ESCALANTE | : | March 27, 2019 |

## THE GOVERNMENT'S SENTENCING MEMORANDUM

On April 4, 2017, defendant Erick Crespo-Escalante pled guilty to one count of conspiracy to possess with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846. He has been detained since his arrest on December 21, 2016. This Court is scheduled to sentence the defendant on April 3, 2019.

The Offense Conduct

On December 21, 2016, Derby Police Department patrol officers conducted a motor vehicle stop on Route 34 in Derby of a large 18 wheeler tractor trailer truck bearing Arizona Registration AG93092, VIN #3HSCUAPR2BN267511, with an attached trailer bearing Arizona registration 02743C, VIN #1UYVS253XAU066601, which were both registered to Eric Escalante. The officer pulled over the truck for failing to stay in its lane and failing to drive in the proper lane, in violation of Conn. Gen. Stat. § 14-236. During that stop and the initial roadside interview, the operator, who was identified as the defendant ERICK CRESPO-ESCALANTE and was the only occupant inside the vehicle, said that he was looking for somewhere to park his truck. The defendant also said that he had recently made a drop of cargo in Orange and was not familiar with where to find diesel fuel for the truck. Officers indicated that the defendant appeared abnormally nervous and, at times, seemed confused as to where he was going and from where he was coming.

Officers observed a large cardboard box located on the front passenger seat of the truck and asked the defendant what was in the box. The defendant replied "Shit" and said that the officers could have the box. This statement raised the officers' concerns, as did his nervous behavior. They asked the defendant to exit the vehicle and to speak with the officers at the rear of the truck. While speaking with the defendant, officers requested a Shelton Police Department K-9 handler to respond to the scene. The defendant told the officers that he would let them speak to his dispatcher to explain where and why he was in Connecticut. Officers spoke with the dispatcher who said that the defendant had failed to tell him that he was leaving the last scheduled delivery stop (in Orange, CT).

A short time later, a Shelton Police K-9 Officer and his K-9 partner arrived on the scene. The K-9 conducted an exterior sniff of the vehicle and alerted to the area of the driver's side door of the vehicle. The positive alert was for the presence of narcotics in the front cab portion of the vehicle.

Based on the alert, the K-9 Officer and his K-9 conducted a search of the interior of the cab portion of the truck. During the search, the K-9 alerted to the positive presence of narcotics on the box that was placed on the front passenger seat of the vehicle. This was the same box that the defendant tried to give to the initial officers who pulled him over. The K-9 also hit on several other areas inside the cab of the truck during the search.

After the positive alert from the narcotics dog, officers retrieved the box from the front passenger seat of the vehicle and moved it to a police vehicle. Officers subsequently opened the box and discovered 25 brick-like packages placed inside vacuum sealed bags. All the packages also contained markings and "stamps" which appeared to be from narcotics trafficking organizations to identify the location and the person from where the narcotics were being transported. Subsequently,

the packages were weighed and tested using two different field tests. The tests were positive for the presence of fentanyl. The packages weighed approximately 25 kilograms.

The Derby Police transported the defendant to their department and towed the tractor trailer. A search warrant executed on the trailer itself did not reveal any additional contraband. Defendant advised the officers on the scene that the package was not his and that the police could take it. In a post-*Miranda* interview, the defendant admitted that he had picked up the package from an unidentified male in California. He then traveled from California to Baltimore, Maryland, where he was directed to go to an address in Waterbury, Connecticut. After making a delivery in Orange, he was heading to Waterbury to deliver the package. The Orange delivery did not involve narcotics. A subsequent lab test confirmed that the packages contained fentanyl.

The Appropriate Sentence

With respect to the advisory guidelines calculation, the Government agrees with the United States Probation Office that the defendant is CHC I. The Government believes that the defendant's total adjusted offense is 31 and that, therefore, his advisory guidelines imprisonment range is 108-135 months.

Under 18 U.S.C. § 3553(a), the Court must consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as "to afford adequate deterrence to criminal conduct" by the public and "to protect the public from further crimes of the defendant." An appropriate sentence must also take into account "the history and characteristics of the defendant." *See* 18 U.S.C. § 3553(a).

Here, the defendant engaged in a serious drug trafficking offense involving a substantial quantity of fentanyl. In 2018, there were over 1000 drug overdose deaths in Connecticut. Approximately 75% of those deaths involved fentanyl. Heroin cut with fentanyl has increasingly

become a problem in Connecticut's cities and surrounding communities. Connecticut is in the midst of an opiate crisis and heroin/fentanyl-related abuse, addiction and overdose deaths are front and center in this burgeoning epidemic. As a result, heroin and fentanyl trafficking has become a priority for federal law enforcement efforts in this district as well as nationwide. As the Court well knows, drug trafficking has a broad array of victims, from the individuals who become addicted, to families that are destroyed, to the erosion of educational and economic opportunities and the decay of whole neighborhoods.

The Government is cognizant that the defendant acted solely as a courier and that his involvement was at the lowest rung of this conspiracy to transport fentanyl from California to Connecticut. The defendant has no prior criminal record and he was not the mastermind behind the acquisition of the fentanyl and the logistics of its transport to Connecticut. The defendant has already spent over two years in detention. He is also subject to likely deportation and may be further detained as he awaits removal.

Accordingly, the Government defers to the Court to impose a sentence that, after consideration of all relevant circumstances, appropriately balances all of the Section 3553(a) factors and is sufficient but not greater than necessary to achieve the purposes of sentencing. The Government does not seek the imposition of a fine.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY
/s/
_____
S. DAVE VATTI
ASSISTANT UNITED STATES ATTORNEY
Fed. Bar. No. ct11957
Office of the U.S. Attorney
450 Main Street, Room 328
Hartford, CT 06103
860-947-1101

6

# CERTIFICATION

I hereby certify that on March 27, 2019, the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/

_____

S. Dave Vatti
Assistant U.S. Attorney